LESTER E. MORFORD, III, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 4666

October 21, 1964

395 P.2d 861

*Stanley H. Brown* and *Leo P. Bergin,* and *Bradley & Drendel,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, and *William J. Raggio,* District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, McNAMEE, J.:

On October 3, 1962 an information was filed against the defendant which contained a charge that on August 22, 1962, within the County of Washoe, State of Nevada, he murdered Jack A. Foster by shooting him in the head with a pistol.

At the time of his arraignment on said charge and

while he was represented by his attorney, on October 18, 1962 he entered a plea of not guilty. Thereupon, it was ordered that a trial by jury be held on December 3, 1962. On November 21, 1962 defendant appeared in court with his attorney who moved the court to continue the trial setting. The court thereupon set January 28, 1963 as the time for trial. Thereafter, without objection by defendant, the matter was further continued until April 22, 1963 for trial. On March 18, 1963 upon stipulation of counsel the trial date was reset for April 29, 1963.

On April 18, 1963 defendant's counsel filed a written motion for an order continuing the trial from April 29, 1963 "to a date when the prejudicial effect of the highly publicized death of Sonja McCaskie, deceased, will not influence unfairly the course of judicial proceedings." This motion further stated that to proceed to trial under the prejudice and hostile sentiment of the general public resulting from newspaper, radio, and television publicity connected with the death of Sonja McCaskie would deprive the defendant of a fair trial and due process of law. The affidavit of Stanley H. Brown, one of defendant's attorneys, relates the daily accounts given by news sources in Washoe County relating to the death of Sonja McCaskie on April 6, 1963; that because of the similarity between the two homicides, particularly with respect to the age and prior history of the accused in each case, the publicity given the McCaskie case highly prejudiced the defendant herein.

The written motion for continuance was denied on April 19, 1963. Thereafter, on said last-mentioned date, defendant's counsel filed another written motion for an order continuing the trial from April 29, 1963 to a date not less than 30 days from April 19, 1963 upon the ground of the inability of a witness, Dr. Leslie H. Gould, to testify on the 29th day of April, 1963. This second written motion for continuance also was denied on April 19, 1963.

On April 26, 1963 defendant appeared in court with counsel and requested permission to withdraw his plea

of not guilty and to enter a plea of guilty without specification of a degree. Permission to do so was granted. The plea of not guilty was withdrawn and defendant entered a plea of guilty. The trial setting for April 29, 1963 was then vacated. Thereafter pursuant to NRS 200.030 this court entered an order appointing Honorable George Marshall, Judge of the Eighth Judicial District, and Honorable Peter Breen, Judge of the Fifth Judicial District, together with Honorable John W. Barrett, before whom the said plea of guilty was made, to determine the degree of the crime, and to give sentence accordingly. On July 15, 1963 the three-judge panel proceeded to hear evidence to determine the degree of the crime and the sentence. Upon the conclusion of the hearing the panel determined that the defendant was guilty of murder in the first degree and fixed the penalty at death. Judgment was entered accordingly. Appeal is from the denial of the two written motions for postponement of trial[1] and from the said judgment.

At approximately 5:00 A.M., on August 22, 1962, Jack Foster, the victim, and his wife, Patricia, were arranging their clothes and other belongings in their car prior to departure from a Reno motel in which they had been staying. They returned to their room for an inspection to see if anything had been forgotten. At that time the defendant entered their room through the open door and held them at pistol point. When he found the Fosters were without funds he ordered the deceased to take him out of town. Patricia joined them in the car. Deceased did the driving, and Patricia sat beside him. Defendant sat next to Patricia in the front seat at her right. Deceased drove the car to Truckee, then along the east side of Lake Tahoe to the Mt. Rose turnoff. He turned there onto the Mt. Rose Highway to a point where defendant directed him to turn off and stop. At all times in the car defendant held the gun in his right

---

[1]This action of the lower court is not appealable (NRS 177.060) but may be considered on the appeal from the judgment.

hand. Defendant then tied deceased's hands to the steering wheel. After a few moments and while it was still dark defendant shot Foster twice through the head. He removed the body of Foster from the car, drove on a short distance, stopped and had sexual intercourse with Mrs. Foster under the constant threat of the gun. Defendant then drove Mrs. Foster over Mt. Rose Highway to Steamboat Springs, between Carson City and Reno, and turned off the road. There again he had sexual intercourse with Mrs. Foster under the same circumstances as the first time. He then drove to Carson City where Mrs. Foster jumped from the car. Defendant was apprehended within an hour thereafter and took the officers to the spot where he had placed deceased's body. The same day he gave a detailed confession of the foregoing facts. Mrs. Foster in her testimony during the trial substantiated every material fact in the confession.

The errors assigned will be discussed separately.

1.  Defendant contends that the court erred in refusing to grant his motion for continuance after the publicity broke with relation to the McCaskie case. The law is settled in Nevada that the granting of a continuance of a criminal case is within the discretion of the trial court. State v. Nelson, 36 Nev. 403, 136 P. 377.

There is nothing appearing from the record to suggest an abuse of discretion in the denial of the motion for continuance on the ground that publicity in connection with an unrelated case would prejudice the defendant. Cf. Robinson v. United States, 128 F.2d 322 (D.C. Cir.).

2.  The denial of the motion for continuance based on the inability of Dr. Leslie H. Gould to testify is without merit. After Dr. Gould was contacted by the defense he was able to confer with Dr. Raymond Brown who was the defense's original choice for the expert testimony regarding the defendant's mental condition. No

showing was made at the trial by the defendant that Dr. Brown's appearance was necessary. He was not called as a witness and Dr. Gould did in fact appear and testify. In any event the question whether the denial of the motions for continuance was proper became moot upon defendant's plea of guilty. See State v. Stoesser, 183 A.2d 824 (Del.Super. 1962).

3. At the time his confession was given as aforesaid[2] the defendant stated that he was willing to give a complete statement on the matter. No promises of leniency or reward were made in return for his making a statement. No coercion of any kind was used and the defendant stated that he was acting voluntarily. He admitted that he was aware of the various rights that he would ordinarily have, to wit, the right to counsel, the right to consult with people, and so forth. After such preliminaries his confession followed. At the end of his confession he stated that he had been advised of his rights and that he knew that he didn't have to answer the preceding questions unless he was willing to do so. Defendant's counsel nevertheless maintain that defendant should have been advised of his constitutional right that he did not have to make a statement, or if he did, that the statement could be used against him in open court. In our opinion the district attorney's admonition to the defendant before the confession was given met all constitutional requirements.

In Nevada, the rule as to admissibility of confessions is that they are admissible if voluntarily given. State v.

---

[2] Officer Fister testified that at the time he apprehended defendant, defendant said that he had reached the end of his rope. "I [Fister] said, 'Maybe not, if he isn't dead, you wouldn't be up for murder,' and he said, 'Hell, he is dead. I shot him in the head twice.' He said, 'I would have shot it out with you but that gun of yours looked too big.' I said, 'That was a pretty wise decision.'" Fister then took defendant to a gas station enroute to Carson City where the attendant related the following: "Mr. Fister and the defendant got out of the car. I bought them each a coke and had one with them. Mr. Fister said, 'Maybe you didn't kill this fellow.' He said, 'No, I shot him.'"

Boudreau, 67 Nev. 36, 214 P.2d 135. Defendant does not contend on appeal that his confession was not given voluntarily. There was no duty to warn defendant of the consequences of his making a statement or that it might be used against him. State v. Gambetta, 66 Nev. 317, 208 P.2d 1059.

Appellant contends that even assuming that the confession was voluntary it was improperly admitted into evidence in view of two recent decisions of the United States Supreme Court: Massiah v. United States, 377 U.S. 201 (1964), and Escobedo v. State of Illinois, 378 U.S. 478 (1964). These cases are easily distinguishable. Massiah was a federal case. In reversing the conviction, the Supreme Court held that defendant suffered a denial of the basic protections of the Sixth Amendment "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." The Court there said: "All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial."

In Escobedo, the Supreme Court by a five to four decision reversed a state conviction because the trial court had admitted into evidence defendant's incriminating statements voiced during defendant's pre-indictment interrogations in the absence of counsel. The officers urged him to admit the crime; he replied, "I am sorry but I would like to have advice from my lawyer." During the course of further interrogation defendant repeatedly asked to see his lawyer, and the lawyer, in turn, attempted to contact defendant but neither effort succeeded. In that case the police in no manner warned him of his constitutional right to remain silent and he was denied the assistance of counsel. Here again the Supreme Court stated the limits of its decision. "We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular

suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial. * * * We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

In People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952, the California Supreme Court had occasion to consider Massiah and Escobedo. In that case the defendant while a life-term inmate of San Quentin Prison was accused of the wrongful death of a fellow prisoner. The prison officers after finding the body of the deceased commenced an immediate investigation and discovered articles which would tend to connect the defendant with the homicide. Defendant was interrogated. At no time did the officers inform the defendant of his right to counsel or of his right to remain silent. Under these circumstances the California Supreme Court held that the confession, even assuming its voluntariness, was improperly admitted into evidence in view of Massiah and Escobedo. The facts in that case are also distinguishable from the case before us which presents no circumstance of any miscarriage of justice.

We might add that in Dorado the decision was based on the premise that the confession or admissions were involuntary resulting in a denial of due process requiring reversal regardless of other evidence of guilt. We believe that Dorado has extended the limited holdings of Massiah and Escobedo.

4. Defendant objected to the admission in evidence of certain colored photographs of the deceased which portrayed his bullet wounds. Although it is true that the corpus delicti was established by the defendant's guilty plea the defendant was not prejudiced by the reception in evidence of these photographs. State v. Holt, 47 Nev. 233, 219 P. 557; State v. Gambetta, supra.

In State v. Huff, 14 N.J. 240, 102 A.2d 8, it was held that the fact that the photographs of a murder victim were in color and hence more revolting and gruesome than they would have been otherwise was not a ground for their exclusion. We approve this holding. In the case now before us the colored tones of the photographs do not add to their gruesome character. The photographs were not taken at the place where the body was found; they were taken sometime later, apparently after the autopsy and after the blood had been removed therefrom, except possibly that around the wounds themselves.

5. Furthermore, this was not a trial, but a proceeding before the court after a plea of guilty. Archibald v. State, 77 Nev. 301, 362 P.2d 721; Rainsberger v. State, 76 Nev. 158, 350 P.2d 995; cf. State v. Blackwell, 65 Nev. 405, 198 P.2d 280, 200 P.2d 698.

6. Defendant claims it was error for the panel to refuse to give "the proper weight to the expert testimony of Dr. Alan K. Done regarding the effects of toluene poisoning upon the defendant at the time of the act in question."

Defendant in his confession stated that he was a user of toluene (glue sniffing) and that he was under the influence of the same at the time of the homicide. Dr. Done testified with respect to the effects of these vapors upon the user. He admitted that there were no experts in this particular field. There was ample evidence however for the panel to conclude that the defendant was in

full possession of his senses when he shot the victim, in view of the testimony of two psychiatrists. Also, defendant's recollection of minute details from the time he kidnapped the Fosters until his apprehension, substantially corroborated by Mrs. Foster, justifies the conclusion by the panel that the killing was voluntary and without justification.

No errors were committed by the panel and the judgment of the trial court should be and is hereby affirmed.

The three judges who constituted the court are directed to execute another warrant pursuant to NRS 176.440.

BADT, C. J., and THOMPSON, J., concur.