Johnnie Clifford **McDOWELL**

v.

**UNITED STATES of America.**

No. 5037.

United States District Court
E. D. Tennessee, S. D.
Oct. 25, 1967.

Lowry F. Kline, Chattanooga, Tenn., for petitioner.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for respondent.

## OPINION

FRANK W. WILSON, District Judge.

This is a postconviction proceeding to test the validity of petitioner's custody under the sentence of this Court. Petitioner was indicted and convicted in 1959 in this Court upon the charge of kidnaping and transporting interstate an eleven year old girl for the purpose of ravishing her, and she not having been released unharmed. The jury did not recommend the death penalty, and petitioner was sentenced to life imprisonment upon November 30, 1959. A summary of petitioner's five previous efforts to obtain postconviction relief is contained in the Court's opinion and order filed herein as of August 2, 1967.

Petitioner originally filed his petition herein as an application for writ of error coram nobis. However, for the reasons set out in its opinion cited above, the Court dismissed the petition as such an application and ordered it re-filed as a petition for relief under 28 U.S.C. § 2255. Petitioner is proceeding in forma pauperis and with the assistance of appointed counsel, at his request.

The petition and response of the government present simply a threefold question of law: whether the statute [18 U.S.C. § 1201(a)] upon which petitioner's indictment was based is unconstitutional because (1) it makes the exercise of the right to a jury trial and/or the right to plead not guilty costly by subjecting an accused to the risk of the death penalty at the hands of a jury, (2) it authorizes cruel and unusual punishment contrary to both the Fifth and Eighth Amendments to the United States Constitution, and (3) it is too vague.

Section 1201(a) of Title 18, United States Code, provides as follows:

"Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death

if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

The defendant was indicted for a violation of this section, was tried by a jury upon his plea of not guilty, and was convicted, but the jury did not recommend the death penalty.

Petitioner's first contention, that the statute makes costly the constitutional right to trial by jury upon a not guilty plea, is identical to that advanced in behalf of the defendants in the recent case of United States v. Jackson, (D.C.Conn., 1967) 262. F.Supp. 716. There the defendants, indicted for interstate transportation of a kidnaped victim, who was alleged to have been harmed when released, moved to dismiss that count of the indictment in which they were so charged. The Court granted their motions, holding in a rather brief opinion that Section 1201(a) did violate defendants' Sixth Amendment rights. The Court said:

"This statute creates an offense which calls for capital punishment upon recommendation of the jury, if proof of harm is introduced at the trial. * * Imposition of the death penalty turns upon the jury's recommendation. Under the terms of the statute, the death penalty may be imposed *only* if the jury so recommends. On the other hand, a recommendation by the jury makes the death penalty *mandatory*.

"If defendants claim their fundamental Sixth Amendment right to trial by jury, therefore, they must risk their lives. That risk is at least substantially reduced if defendants waive their constitutional right to jury trial by claiming trial to the court or by pleading guilty * * * even if the trial court has the power to submit the issue of punishment to a jury, that power is discretionary, its exercise uncertain. If defendants waive jury trial or plead guilty, therefore, they may thus gain immunity from capital punishment; if

they assert their constitutional right to jury trial, however, the price for assertion of such constitutional right is the risk of death * * *.

* * * * * *

"This Court therefore holds that 18 U.S.C. § 1201(a), to the extent that it impairs defendants' free exercise of their right to trial by jury, violates the Sixth Amendment to the Constitution of the United States and is invalid." (Emphasis present)

The action of the District Court was appealed directly to the Supreme Court, which noted probable jurisdiction on May 29, 1967. The case is docketed for the 1967-68 term as No. 85 (No. 1236 in the preceding term), and has been placed on the summary calendar. 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 989. See also 36 L.W. 3002, 3012. Petitioner in the *Jackson* case was granted leave to proceed in forma pauperis on October 9, 1967, 389 U.S. 805, 88 S.Ct. 32, 19 L.Ed.2d 59.

The petitioner in the present case received a jury trial and the death penalty was not imposed. There is, in this case, an immediate problem of the standing of the petitioner to raise the issue here asserted. If, as the Court in *Jackson* holds, Section 1201(a) is unconstitutional insofar as it impairs the right to trial by jury, there follows the question whether all of that section is thereby rendered invalid. If the provision of that section authorizing the death penalty may be severed from the remainder, which defines the offense and makes it otherwise punishable, then the latter portion might remain valid even though the former portion be adjudged invalid. If the *Jackson* holding is correct, and if Section 1201(a) is not severable, then presumably no person has ever been lawfully convicted thereunder, including petitioner. However, if Section 1201(a) is severable to the extent that only the portion thereof providing for the death penalty is invalid, then only those persons who (1) are under a death sentence imposed pursuant to 1201 or (2) pled guilty to a violation of 1201 or (3) waived jury trial and were convicted by

a Court without a jury of a violation of 1201 might successfully seek relief upon the basis of the *Jackson* holding. Defendant, of course, pled not guilty and was convicted by a jury, but received only a life sentence.

■ The question whether portions of a statute which are unconstitutional shall be upheld while other portions are eliminated as unconstitutional involves primarily the ascertainment of the intention of the legislature. See 16 Am.Jur.2d 414, "Constitutional Law" 186, wherein it is also said:

"If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their entirety, it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly, the entire statute is invalid."

It has been said, it is true, that the process of severance is difficult to apply to most penal statutes, and that the courts incline toward voiding entire criminal provisions where part is invalid. 16 Am. Jur.2d 431, "Constitutional Law" 196. However, the Court is of the opinion that severance could be logically and readily accomplished in the case of Section 1201 (a), if the *Jackson* holding is correct, by simply holding invalid only that portion which provides "(1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2)". This would seem to the Court to be clearly in accord with what must have been the intent of Congress, that is, to make it an offense against the United States to transport a kidnaped person across a state line and to provide for such offense punishment, at least for a term of years or life. It would be strange indeed if the Congressional intent were to make interstate transportation of kidnaped persons an offense only if the death penalty could be imposed. The fact that death and imprisonment are clearly stated in numbered alternatives reinforces this view.

■ The Court is of the opinion that, if any portion of Section 1201(a) is unconstitutional, only that portion is invalid which provides for the death penalty, as set forth in the preceding paragraph. Accordingly, since petitioner is not under a sentence of death, and did not plead guilty, and did not waive his right to trial by jury, the Court is of the opinion that he has no standing to attack the questionable portion of Section 1201 (a). In other words, the questionable portion of the statute has in no wise affected any right of petitioner's, and is thus not subject to his attack. See 16 Am.Jur.2d, "Constitutional Law" 119–126.

However, the Court recognizes the desirability of settling the question raised by petitioner's first contention, in view of the decision of another United States District Court in *Jackson*. The Court will accordingly further consider the constitutionality of the questioned portion of Section 1201(a).

The *Jackson* case is only about ten months old, and, as stated above, is pending appeal in the United States Supreme Court. It has been the subject of comment by only two other courts, so far as this Court can determine. Robinson v. United States, (W.D.Ky., 1967) 264 F. Supp. 146, was a proceeding pursuant to 28 U.S.C. § 2255 to vacate sentence. Petitioner had been convicted upon a plea of guilty of the offenses of kidnaping and conspiracy to kidnap in violation of Section 1201(a) and sentenced to life imprisonment. That judgment and sentence had been pronounced void in a prior post-conviction proceeding [Robinson v. Johnston, (D.C.Calif., 1943) 50 F.Supp. 774]. Petitioner was re-tried, this time upon a

plea of not guilty, and was convicted by a jury which recommended the death sentence. The death sentence was subsequently commuted to life imprisonment by the President of the United States. Among Robinson's contentions advanced during the course of the litigation was an attack upon the constitutionality of Section 1201(a), relying upon the *Jackson* holding. Judge Gordon took note of the *Jackson* opinion, but disagreed with its reasoning, pointing out that a district court could in its discretion, either impose or not impose a death penalty, even if the jury recommended death, or could refuse to give the death penalty instruction, or could grant a new trial if it had reservations about the jury's recommendation of death. The Court further pointed out that one charged with a crime had no constitutional right to be informed of possible punishments, and that a jury might be impaneled to consider the death penalty even upon a plea of guilty to a violation of Section 1201(a). He concluded:

"This Court is unable to see any conflict between the kidnaping statute and the Sixth Amendment to the Constitution; there being a strong presumption in favor of the validity of statutes, this Court holds the statute under which petitioner was convicted to be valid."

In Laboy v. New Jersey, (D.C.N.J., 1967) 266 F.Supp. 581, petitioner sought a writ of habeas corpus on the ground that his plea of "non vult" to the state charge of murder was not voluntarily entered in that petitioner lacked mental capacity and that petitioner's mind was overborne by psychological coercion and fear of the electric chair. Under New Jersey law, a plea of "non vult", if accepted by the trial court, means that one will receive at most a term of life imprisonment, for the death penalty cannot be imposed without a jury. The situation was thus analogous to the *Jackson* situation, and Judge Arthur S. Lane, then sitting, reasoned as follows:

"Concededly, the fact that only a jury may impose the death penalty is a factor which weighs against entering a plea of not guilty and undergoing trial by a jury. However, we disagree with the conclusion that the *Jackson* case draws from this. It does not necessarily follow that this 'obstacle' to a jury trial is tantamount to a *denial* of the right to a jury trial. To determine when such an 'obstacle' becomes so great as to be considered a denial of the right to a jury trial, it is necessary to compare the degree of the 'obstacle' against the value of the policy which it implements.

"The New Jersey procedure involved in the instant case enunciates a legislative policy which deems it unwise to allow a judge acting alone to impose the death penalty * * * Presumably, the legislative branch had determined that the imposition of the death penalty is such a serious decision that it is unfair to the defendant (and possibly to the judge) to have it rest on the shoulders of one man; that such a decision can only be entrusted to twelve fair and open-minded citizens whose values approximate those of the community from which they are chosen.

"This is a valid legislative policy which operates primarily for the class of defendants of which petitioner is a member. The fact that the procedure which implements this policy may in some cases influence a defendant, who has evaluated the alternatives open to him, to forego a trial by jury does not, in our opinion, invalidate the statutory scheme. The benefit which results from the procedure is sufficiently great that we are not compelled to strike it down in the name of providing an unobstructed choice of a trial by jury. (Emphasis present)"

The Court rejected the contentions of petitioner and denied the writ. Of course, it must be considered in weighing this case as authority that the Fourteenth Amendment to the United States Constitution has not yet been held to incorporate the specific right to a jury trial embodied in the Sixth Amendment. Nevertheless, the Court thinks the reasoning of Judge Lane helpful in considering petitioner's contention.

The authoritative underpinning for the *Jackson* holding is the recent decision of the United States Supreme Court in Griffin v. California, (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, wherein it was held that the California "comment rule" was a penalty imposed for the exercise of the constitutional right not to take the witness stand and testify when a defendant in a criminal case and that such comment violated due process of law. The Court is of the view that *Griffin* does not require the result reached in *Jackson,* though it does provide some support for the holding in the latter case. The practice of allowing argument upon a defendant's refusal to testify serves no valid purpose, and merely serves to strengthen an impermissible inference, that is, that a defendant who declines to testify does so because he would be unable to truthfully deny his guilt. This is quite different from the situation presented in this case, where the legislative body has given effect to a valid and reasonable policy by providing that the death penalty, before it can be imposed, must be approved both by a unanimous jury and by the trial judge. Although this policy may have the side effect of sometimes influencing one to forego trial by jury, the Court is of the opinion that the different considerations involved in these distinct situations may well justify a different result.

If the death penalty portion of Section 1201(a) were held unconstitutional, then the Congress might do either of two things. It might decline to further provide for capital punishment in kidnaping cases. This would be a decision properly within the legislative sphere. Upon the other hand, it might provide that a judge might impose capital punishment without the recommendation of a jury. That, too, would be a matter for the legislature. If it might properly provide for the latter alternative, it would appear that it could provide an additional safeguard upon the exercise of capital punishment in the form of the requirement of a jury recommendation. A defendant indicted for a violation of Section 1201(a) cannot be said to have it the worse because a jury, as well as a judge, must concur in a capital sentence, than if a capital sentence could lawfully be meted out by a judge alone. Whatever may be the merits or demerits of capital punishment, the Court is of the opinion that the legislative policy of interposing the jury between a judge and the imposition of capital punishment upon a defendant is a valid policy, and, moreover, one which should not be overturned for any but the weightiest of reasons.

The Supreme Court has recently held that there is no constitutional right to trial *without* a jury. Singer v. United States, (1965) 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630; Cf. Adams v. United States ex rel. McCann, (1942) 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268. Accordingly, even if a defendant wished to waive a jury and thereby avoid the risk of the death penalty, he might not be able to do so.

The Court is of the opinion, upon the foregoing reasons and authorities, that Section 1201(a) is not unconstitutional as contended in the first ground of the petition.

Petitioner's next contention is that Section 1201(a) is unconstitutional in that it authorizes cruel and unusual punishment in violation of the Fifth and Eighth Amendments to the United States Constitution. Defendant contends that the death penalty is grossly disproportionate to possible offenses under the statute wherein human life is not taken nor seriously threatened.

For the same reasons mentioned hereinbefore with regard to petitioner's first contention, the Court is of the opinion that petitioner lacks standing to challenge the death penalty provision of Section 1201(a). He is not now and has never been subject to that penalty. Courts are not constituted to resolve hypothetical controversies.

Finally, petitioner contends that Section 1201(a) is unconstitutionally vague. Petitioner first argues that the statute does not require motive. Of course, there is no requirement, constitu-

tional or otherwise, that motive be made an essential element of any crime. The use of the word "knowingly" in Section 1201(a) is sufficient to protect the innocent from punishment for any inadvertent or unknowing interstate transportation of kidnaped persons. In further support of his contention, petitioner relies upon the dissenting opinion of Mr. Justice Rutledge in Robinson v. United States, (1944) 324 U.S. 282, 289, 65 S. Ct. 666, 89 L.Ed. 944. The majority held the portion of the statute authorizing the death penalty when the victim has not been "liberated unharmed" to be constitutional and specifically considered the argument that the quoted phrase was uncertain and ambiguous. 324 U.S. 286, 89 L.Ed. 947.

The Court, having carefully considered the arguments and contentions advanced by and on behalf of the petitioner, is of the opinion that Section 1201 (a) does not violate the United States Constitution, and that petitioner was lawfully convicted of violation thereof and lawfully sentenced to his present term. The Court is accordingly of the opinion that the instant petition should be dismissed.