PIERCE SPILLERS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 5250

January 4, 1968                    436 P.2d 18

*Richard E. Fray* and *J. Rayner Kjeldsen,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

This is an appeal from the conviction of Pierce Spillers for rape accompanied with acts of extreme violence and with great bodily injury inflicted in violation of NRS 200.360(1).

On June 28, 1966 the prosecutrix was raped in her home in Reno during the early morning hours as she arose and prepared to go to work. She had arisen at approximately 1:00 a.m. The lights in various parts of the house were turned on. She heard a noise and supecting a prowler went to the dresser and obtained a pistol kept there. She looked out of the bedroom into the hall and spotted the assailant. Temporarily unnerved, she was unable to fire the pistol. Whereupon he

lunged; they wrestled for the gun, and a shot was fired into the ceiling as they struggled in the bedroom. The assailant gained control of the gun and told the screaming victim to be quiet or "he'd choke her to death." The assailant struck the victim on the head with the gun. Stunned, she slumped to a sitting position. When her four-year-old son awakened and entered the room the attacker put the gun to the boy's head and ordered the prosecutrix to tell the boy to go to his room or he'd shoot him. She so ordered the boy and he obeyed. Striking his victim once more the assailant threw her on the bed, tore off her clothes, covered her head with a pillow, struck her again and committed the act of rape.

After the attack she went to a neighbor's house for help. The police were called. The victim described the attacker as a Negro, approximately 23 years old, estimated his height and weight, and stated he was wearing prison-type garb and white tennis shoes.

With the aid of a police dog who trailed a "track" (by scent) to the nearby Peavine Honor Camp, the police arrived at the camp and in due course of time apprehended Spillers because he answered the description of the assailant, and had blood and other stains on his clothes and bed sheets.

After a trial to a jury Spillers was found guilty of rape. The jury affixed the penalty at death and he appeals.

His assignments of error are numerous but they can be grouped: first, in the court's refusal to allow certain questions concerning racial prejudice at the voir dire examination; second, rulings on the admissibility of certain evidence; third, denial of certain motions, to wit, refusal to

(a) change venue and to grant a continuance because of pretrial and trial publicity;

(b) permit defendant to remain in the sheriff's custody in Reno instead of remaining in the state prison in Carson City, 30 miles away;

(c) allow funds for expert witnesses and additional discovery;

(d) suppress certain evidence that did not meet search and seizure requirements;

(e) allow a jury view of the premises where the attack took place;

(f) dismiss prospective jurors who did not believe in capital punishment; and

fourth, that NRS 200.360(1) is unconstitutional because it contravenes the 6th and 14th Amendments of the Constitution of the United States. There is no merit to any of the claims of error except the fourth.

Without reference to the fourth assignment of error a review of the entire case leaves no doubt as to the defendant's guilt inasmuch as the evidence thereof is convincing beyond a reasonable doubt. The assignments of error which go to the merits of the case depend largely upon the discretion of the trial judge which we find was not abused.

1. The prosecutrix is a white woman, Spillers is a Negro. One prospective juror at the voir dire examination for the selection of the jury was asked, "You do not feel you have any antagonism inherent toward people of the Negro race at all?" Answer: "No." Question: "Would you be quite agreeable to having a Negro person live next door to you?" Another question: "Would you object to your children attending school largely populated by Negro children?" Upon objection the trial court ruled that those two latter questions were improper. Thereafter, no further efforts were made to develop disqualification for prejudice by reason of race, creed or color.

In a criminal case any party to a jury trial has the right to examine prospective jurors on the voir dire. Extent to which the parties may go in such an examination rests largely in the discretion of the court. On review such discretion is accorded considerable latitude. It is generally regarded as reversible error in a criminal case in which a Negro is a defendant to exclude questions designed to bring out that a prospective juror is so prejudiced against the Negro race that it would take less evidence to convince him that a Negro is guilty of a crime charged than to convince him that a white person had committed the same crime. State v. Higgs, 120 A.2d 152 (Conn. 1956), and cases cited therein. But here the trial judge was not given the opportunity to rule on the questions that would directly concern the state of mind of the jurors as would affect their abilities to sit on this case. They were not asked whether they would require more proof because the defendant is a Negro. We must assume that the jurors having been passed for cause and having survived the peremptory challenges had unprejudiced minds so far as the trial of this defendant is concerned. Aldridge v. United States, 283 U.S. 308 (1931).

2. Many rulings were made concerning the admissibility of certain testimony and evidence. To itemize them would reflect only that they were the customary problems presented in a trial. Our review reveals no abuse of discretion and therefore no error. We rule the same on the objections to certain instructions given as well as those refused. The jury was adequately instructed on the applicable law.

3(a).   Defendant stresses that pretrial publicity attending the trial of the case deprived him of a fair trial because the subject of prison camps (Spillers was an inmate at the time of the offense) was an issue in the gubernatorial campaign being waged during the same year. The trial court properly denied the motion for continuance and motion for change of venue after examining copies of the news articles and radio and television transcripts. Morford v. State, 80 Nev. 438, 395 P.2d 861 (1964). Only ordinary news value was assigned by the news media to this incident. We do not have here the situation of Sheppard v. Maxwell, 384 U.S. 333 (1966), Estes v. Texas, 381 U. S. 532 (1965), or Rideau v. Louisiana, 373 U.S. 723 (1963), where the communities were saturated with publicity so complete in its envelopment that the prejudice of every juror could be presumed.

3(b).   No prejudice was shown other than inconvenience that would require defendant's counsel to consult with him at the Washoe County Jail in Reno instead of at the state prison 30 miles away. Again, it was a discretionary matter. We find no abuse. Lewis v. United States, 277 F.2d 378, 380 (10th Cir. 1960).

3(c).   No showing was made that funds were needed to obtain any particular material witness or evidence. In fact, whatever the prosecution had as evidence was made available to the defendant for examination before trial. Upon a showing of need the court may order provision be made for necessary witnesses or evidence, but the record is void of need.

3(d).   Spillers complains that when he was arrested at the prison camp his clothing was searched and seized without court approved warrants or his permission. As to this, he has no standing to complain. He is in prison for a prior offense and a search of his quarters and seizure of his effects are not to be tested by the rules which apply to citizens who are possessed of full civil rights. People v. West, 61 Cal.Rptr. 216, 220 (Cal.App. 1967). We add, the search and seizure was incident to a lawful arrest.

3(e).   A jury view does not serve the place of evidence. Its only function is to assist the jury in comprehending the

evidence before it. There was no abuse of discretion when the court did not grant the request.

3(f). NRS 175.105(9)[1] compels the exclusion from the jury of anyone who entertains such conscientious opinions as would preclude his finding the defendant guilty if the offense is punishable with death.

The determination of guilt or innocence must be made free of any biases or prejudices. Certainly, a juror who has a fixed mind against the death penaly is not unbiased and, therefore, cannot adjudicate the facts fairly. Such a person is not competent to serve as a juror. We do not agree with the defendant's contention that a jury composed of 12 persons who are sworn that they can prescribe the death penalty *in a proper case* are death oriented. They are sworn only to do their duty as jurors. See State v. Williams, 50 Nev. 271, 257 P. 619 (1927).

4. The point raised as to the constitutionality of the rape statute has merit.[2] A jury found Pierce Spillers guilty of rape with violence and imposed the penalty of death. Under that statute only the jury could direct death. Had Spillers entered a plea of guilty to the charge, the court could not have sentenced him to death. The court's power to punish is specifically limited to imprisonment for a term of not less than 20 years. Neither is the court empowered to exact the extreme penalty had Spillers pleaded not guilty, and with the State's consent and court approval waived a jury trial, been tried before the court and found guilty. (Rains v. State, 83 Nev. 58, 422 P.2d 541

---

[1]NRS 175.105. "A challenge for implied bias may be taken for all or any of the following causes, and for no other:

\* \* \* \* \*

"9. If the offense charged is punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; in which case he must neither be permitted nor compelled to serve as a juror."

[2]NRS 200.360(1). "Rape is the carnal knowledge of a female, forcibly and against her will, and a person duly convicted thereof shall be punished by imprisonment in the state prison for a term of not less than 5 years and which may extend to life; but if such crime be accompanied with acts of extreme violence and great bodily injury inflicted, the person guilty thereof shall be punished by imprisonment in the state prison for a term of not less than 20 years, or he shall suffer death, if the jury by their verdict affix the death penalty."

30

(1967).) This lopsided penalty scheme is not constitutionally permissible.[3]

The Sixth Amendment to the federal constitution and art. 1, § 3 of our state constitution each guaranty the right of trial by jury to one accused of crime. This right is of fundamental character and may not be diminished in value, or its free exercise impaired or discouraged.[4]

One charged under NRS 200.360(1) is compelled to pay a terrible price for exercising his constitutional right to a jury trial—the possibility of death. A coercion exists to forego that right and prefer court adjudication, since the court is powerless to order death. Indeed, in some instances the compelling force may be so great as to cause one who is not guilty to plead guilty, or at least to attempt to place his case before the court at trial without a jury.[5] One accused under the statute may thus be discouraged from exercising his right to a jury trial, or suffer a possible increased penalty if he does so. To suggest that one's constitutional right to a jury trial in such circumstances is not impaired is to ignore the obvious.

It is no answer to say that Spillers voluntarily, and with the advice of competent counsel, elected to exercise his right to

---

[3]Similar constitutional objections have been raised concerning 18 U.S.C. § 1201(a), the Federal Kidnapping Statute, commonly referred to as the Lindbergh Law, which provides: "Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, *shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend,* or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed." (Emphasis added.) See United States v. Jackson, 262 F.Supp. 716 (D. Conn. 1967); also Waley v. United States, 233 F.2d 804 (9th Cir. 1956), cert. denied 352 U.S. 896 (1956). Cf. Seadlund v. United States, 97 F.2d 742 (7th Cir. 1938); LaBoy v. New Jersey, 266 F.Supp. 581 (D.N.J. 1967); Robinson v. United States, 264 F.Supp. 146 (Ky. 1967); and McDowell v. United States (No. 5037, Advance Opinion, filed October 25, 1967, E.D. Tenn., digest of opinion found in 2 Cr.L. 2129). (Jackson is presently under review by the U.S. Supreme Court, 387 U.S. 929.)

[4]Art. 1, § 3, Nevada Constitution: "The right of trial by jury *shall be secured to all and remain inviolate forever; * * *.*" (Emphasis added.)

[5]NRS 174.480 requires the state's consent before a defendant can waive a jury. Although not stated, the approval of the court is then essential and is usually not forthcoming, particularly in a capital case.

trial by jury knowing the possible consequence of death. United States v. Wiley, 278 F.2d 500, 504 (7th Cir. 1960). The constitutionality of the penalty scheme does not depend upon what the accused does. The statute must stand or fall on its own without regard to the identity of the defendant or the course of action selected by him.

Equally unsound is the notion that the legislature intended the court and jury to have equivalent punishment power for the crime of rape with violence. The opposite is true since the statute reads that only the jury may decree death.

---

The equal protection clause of the Fourteenth Amendment to the federal constitution also denies validity to the penalty scheme of NRS 200.360(1). A state may not prescribe different penalties for the same offense without violating the equal protection concept. Thus the statute is unconstitutional insofar as it allows a jury to impose a greater penalty than a court for the same offense, thus violating the Sixth and Fourteenth Amendments to the federal constitution, and art. 1, § 3 of our state constitution. (United States v. Jackson, supra, footnote 3.)

---

NRS 177.240[6] invests this court with authority to "reverse, affirm, or modify the judgment appealed from." The sentence imposed is a part of the judgment. Allgood v. State, 78 Nev. 326, 372 P.2d 466 (1962); Ex parte Salge, 1 Nev. 449 (1865). Thus, we may modify an unauthorized sentence and substitute therefor any proper sentence that was open to the sentencing court. State v. Moore, 48 Nev. 405, 233 P. 523 (1925); State v. Johnson, 75 Nev. 481, 346 P.2d 291 (1959); see also State v. Squier, 56 Nev. 386, 54 P.2d 227 (1936).

---

Nevada has adopted the indeterminate sentence concept— that is, the sentence is for the maximum period imposed by the court subject to termination by parole after service of the minimum term. Ex parte Melosevich, 36 Nev. 67, 133 P. 57 (1913); State v. Moore, supra. Accordingly, the sentencing court must provide for the maximum period when the statute

---

[6]NRS 177.240. *"Determination of appeal.* The appellate court may reverse, affirm, or modify the judgment appealed from, and may if necessary or proper, order a new trial."

designates only the minimum.[7] The statute before us, NRS 200.360(1) provides only for a minimum term of not less than 20 years. The maximum period is not set. Thus, the court must supply the maximum in harmony with the theory of the indeterminate sentence—that is, a maximum which will allow for the possibility of parole. A court is not authorized to preclude the possibility of parole unless the legislature has expressly granted that authority. That authority has not been given for the crime of rape. It is only with regard to first degree murder that a court, or jury, may impose sentence without the possibility of parole. Consequently, in the case at hand the new sentence shall be imprisonment for a term of not less than 20 years which may extend to life. Ex parte Lair, 233 P. 789 (Okla. 1925).

Affirmed in part, reversed in part as modified.

THOMPSON, C. J., and BATJER, J., concur.

COLLINS and MOWBRAY, JJ., dissenting:

We dissent.

The majority opinion holds the penalty provision of NRS 200.360(1) is violative of the Sixth Amendment (right to jury trial) of the United States Constitution, Art. 1, Sec. 3 of the Nevada Constitution, and a denial of due process under the Fourteenth Amendment.

Once again this court is trying to outleap the federal courts, and in doing so reaches far afield to thwart, confound and confuse orderly criminal procedure. The majority relies principally upon one federal district court case, United States v. Jackson, 262 F.Supp. 716 (D. Conn. 1967), and the tenuous circumstances that such case is under review by the United States Supreme Court as its authority to hold the punishment imposed by the jury unconstitutional. We say it is time enough to follow the United States Supreme Court when it makes such a ruling

---

[7]NRS 176.180:  *"Indeterminate sentence of imprisonment; duties of district attorney and warden.*

"1.   Whenever any person shall be convicted of any felony for which no fixed period of confinement is imposed by law and where a judgment of confinement is rendered, the court shall, in addition to any fine or forfeiture which it may impose, direct that such person be confined in the state prison for an indeterminate term limited only by the minimum and maximum term of imprisonment prescribed by law for the offense of which such person shall be convicted.

"2.   Where no minimum term of imprisonment is prescribed by law, the court shall fix the minimum term in its discretion at not less than 1 year nor more than 5 years, and where no maximum term of imprisonment is prescribed by law, the court shall fix such maximum term of imprisonment. * * *"

and makes it binding upon the states through the Fourteenth Amendment. Until then we ought to presume our statute to be constitutional and uphold it if we can. State v. McClear, 11 Nev. 39 (1876); State v. Jon, 46 Nev. 418, 211 P. 676 (1923); State v. Plunkett, 62 Nev. 265, 149 P.2d 101 (1944). There is a way.

In the first place there are a greater number of cases and equally respectable authority that statutes similar to our rape statute (NRS 200.360(1)) are constitutional. Another federal district court held that a New Jersey statute which provided that only a jury could assess the death penalty did not violate the Sixth Amendment. LaBoy v. New Jersey, 266 F.Supp. 581, 585 (D.N.J. 1967). In LaBoy, Judge Lane discussed the Jackson case and wrote:

"Concededly, the fact that only a jury may impose the death penalty is a factor which weighs against entering a plea of not guilty and undergoing trial by a jury. However, we disagree with the conclusion that the *Jackson* case draws from this. It does not necessarily follow that this 'obstacle' to a jury trial is tantamount to a *denial* of the right to a jury trial. To determine when such an 'obstacle' becomes so great as to be considered a denial of the right to a jury trial, it is necessary to compare the degree of the 'obstacle' against the value of the policy which it implements.

"The New Jersey procedure involved in the instant case enunciates a legislative policy which deems it unwise to allow a judge acting alone to impose the death penalty. In this state the death penalty may be imposed only when a jury of twelve of the defendant's peers decides that it is appropriate. Presumably, the legislative branch has determined that the imposition of the death penalty is such a serious decision that it is unfair to the defendant (and possibly to the judge) to have it rest on the shoulders of one man; that such a decision can only be entrusted to twelve fair and open-minded citizens whose values approximate those of the community from which they are chosen.

"This is a valid legislative policy which operates primarily for the class of defendants of which petitioner is a member. The fact that the procedure which implements this policy may in some cases influence a defendant, who has evaluated the alternatives open to him, to forego a trial by jury does not, in our opinion, invalidate the statutory scheme. The benefit which results from the procedure is sufficiently great that we are not compelled to strike it down in the name of providing an unobstructed choice of a trial by jury."

Furthermore, it has not yet been decided that the Sixth

Amendment right of jury trial under the United States Constitution is binding upon the states through the Fourteenth Amendment. Turner v. Louisiana, 379 U.S. 466 (1965). Likewise there is no constitutional right to a trial without a jury. Singer v. United States, 380 U.S. 24 (1965); Rains v. State, 83 Nev. 58, 422 P.2d 541 (1967). Moreover, in Nevada a defendant may not as a matter of right demand a trial before the court alone. Both the district attorney and the court must consent because the state too has a right to have the issue decided by a jury. NRS 174.480.[1]

In Robinson v. United States, 264 F.Supp. 146 (W.D. Ky. 1967), the federal kidnapping statute (18 U.S.C.A., § 1201(a) was upheld on a Sixth Amendment attack against it, and specifically disagreed with the holding in Jackson.[2]

In another opinion by a federal district judge, the federal kidnapping statute was also constitutionally upheld. McDowell v. United States, 274 F.Supp. 426 (E.D. Tenn., October 25, 1967). It is ably reasoned in that opinion, "A defendant indicted for a violation of Section 1201(a) cannot be said to have it the worse because a jury, as well as a judge, must concur in a capital sentence, than if a capital sentence could lawfully be meted out by a judge alone. Whatever may be the merits or demerits of capital punishment, the Court is of the opinion that the legislative policy of interposing the jury between a judge and the imposition of capital punishment upon a defendant is a valid policy, and, moreover, one which should not be overturned for any but the weightiest of reasons."

The majority opinion holds that Spillers "is compelled to pay a terrible price for exercising his constitutional right to a jury trial—the possibility of death." But the record does not bear out that conclusion. Actually at the arraignment in district court Spillers, with counsel present, stood mute and the court, under NRS 174.400, was compelled to and did enter a plea of not guilty for him. The court then directed the case to be set down for trial before a jury, the customary order in all felony cases. Thus it is inaccurate to say Spillers intentionally chose one mode of trial over any other. By standing mute, he forced the court to exercise the only choice available under those circumstances; that is, a not guilty plea and a trial by jury. This circumstance carries the inescapable conclusion that Spillers

---

[1] We venture to say that few, if any, trial judges in Nevada would, unless clearly compelled by law, consent to a capital case being tried before the court alone instead of a jury.

[2] It should be noted, however, that under federal law the recommendation of the death sentence is not binding upon the court.

never attempted to exercise his right, if he even had one, to be tried by the court alone.

It is extremely difficult to see how a person has been prejudiced when he is accorded the most valuable of all constitutional rights, the opportunity of having his guilt or innocence decided by a jury of fellow citizens and peers. When contrasted with the fact, as disclosed by the record, that at no time did he ever attempt in any way, directly or indirectly, to have his guilt or innocence determined by a trial before the court alone, or that he even toyed with the idea of a plea of guilty to the aggravated rape charge to avoid the possibility of the death sentence, one can only conclude he knowingly waived any other rights he may have had. In making those waivers he clearly did so with competent counsel present and advising him. After having enjoyed the full benefit and advantage of a jury trial, which resulted in a determination of his guilt beyond a reasonable doubt, as expressly noted by the majority of this court, he now seeks to avoid the punishment affixed by the jury, a penalty he knew to be within their power if they found he committed the rape and it was accompanied with violence.

The defendant and his counsel also knew under the very same statute that, if the evidence warranted it, the jury could have found Spillers either not guilty or guilty only of non-violent rape. If the latter verdict had been rendered, the judge would be compelled by law to sentence Spillers to not less than 5 years nor more than life. But here the evidence of violence and aggravation was great.[3] The jury, no doubt contrary to the hopes and expectations of Spillers and his counsel, not only convicted him, but fixed his punishment at death for his violent and aggravated conduct in raping his victim.

The majority of the court engages and indulges in flights of pure fantasy and speculation, nowhere borne out in the record, when they say Spillers was "coerced" or "compelled" in the manner of trial he had or could have had. There is nothing constitutionally wrong with the rape statute, which has been unchanged on the law books of Nevada since 1911. The only thing that could and did subject Spillers to the terrible price of

---

[3]Spillers entered the victim's home in the dark of night; the victim and Spillers fought over a gun; a shot was fired; Spillers threatened to choke her to death if she didn't be quiet and submit to his demands; Spillers struck her several times; Spillers covered her head with a pillow —all within the sanctity of her own home and bedroom—and as a terrifying climax, which would no doubt kill the will to resist of any woman, held the gun to the head of and threatened to shoot her 4-year-old son.

death was his terrible violence and aggravation in raping an innocent woman and mother in her own home in the dead of night within the sight and sound of her own children.

He seeks by hindsight a procedure he waived by foresight. As fallible human beings, we would indeed be fortunate if we could always enjoy the wisdom of hindsight in our conduct of life's affairs. We cannot, and because the law follows the rules of life, it should not. Those who would try to make it different by artificial reasoning are doing a disservice to orderly processes of the law. We are inclined to believe many courts in this land are permitting hindsight of those accused of crime to largely control appellate review. As a result, it is not uncommon for appellate review to continue from five to even ten years, at a cost that is enormous. We urge a rule that sharply limits interminable reconsiderations in both the state and federal court systems when the genesis of the point to be reviewed is attributable to hindsight.

But this decision may have a more far-reaching effect than the majority of this court realizes. It may open the door to every prisoner in Nevada convicted by a jury of the unlawful killing of a human being under NRS 200.010 to 200.030 to complain that their sentences are unconstitutional. We might well be plagued with writs of habeas corpus and we may have to grant them under the authority of this decision. As we view it, a person convicted of homicide pursuant to NRS 200.010 to 200.030 could urge the same argument that Spillers makes here. Under the homicide statutes, on the plea of not guilty requiring a trial, only the jury can fix the death penalty. The court alone could not.

Admittedly there is a distinction on a homicide charge if a defendant pleads guilty to an open charge of murder. A three-judge district court must be assembled. NRS 200.030(3). There is no such express provision under the aggravated rape statute. We think, however, that the rape statute could reasonably be construed to conform to the homicide statute requiring the calling of a three-judge district court on a plea of guilty.

In any event, neither of those questions is before us. Spillers made no effort to test the constitutionality of the rape statute upon the questions of either a plea of guilty or a trial before the court before he accepted the benefit of the jury trial ordered for him by the court. The constitutionality of a statute can always be tested by habeas corpus, Ex parte Philipie, 82 Nev. 215, 414 P.2d 949 (1966). Had he initiated such test he would have avoided "the terrible price for exercising his constitutional right to a jury trial," which looms so large in the

mind of the majority. Accordingly, we would affirm the conviction and sentence.