## TERRY LYNN CONGER, Appellant, v. WARDEN, NEVADA STATE PRISON, Respondent.

No. 6948

June 7, 1973                                          510 P.2d 1359

*Gary A. Sheerin,* State Public Defender, for Appellant.

*Robert List,* Attorney General, and *Herbert F. Ahlswede,* Chief Deputy Attorney General, for Respondent.

# OPINION

By the Court, THOMPSON, C. J.:

Terry Lynn Conger entered his plea of guilty to each of three counts of murder and is serving consecutive life sentences without the possibility of parole for each offense. Conger later was prosecuted in the federal court for bank robbery, found guilty thereof, and sentenced to fifty years imprisonment to commence upon completion of the state sentences. By this post-conviction proceeding he seeks leave to withdraw his guilty pleas to the state charges, asserting that the Nevada statutory scheme was coercive and subordinately, that his decision to so plead was induced by a promise of the federal prosecutor that the federal bank robbery charge would be dismissed. The district court denied relief. We affirm.

1. The guilty pleas were entered pursuant to NRS 174.-065(2).[1] Since a jury could have sentenced him to death had he pleaded not guilty and, by the jury found guilty [NRS 200.-030(3)], he contends that his guilty pleas must be deemed to have been coerced and, therefore, are void. This contention rests upon the cases of Spillers v. State, 84 Nev. 23, 436 P.2d 18 (1968), and United States v. Jackson, 390 U.S. 570 (1968).

In *Spillers,* the statutory scheme was such that a guilty plea to the court, or a not guilty plea followed by a court trial, would result in a sentence of not less than 20 years, whereas a not guilty plea followed by a jury trial could result in the death

---

[1]NRS 174.065(2): "On a plea of guilty to an indictment or information for an offense punishable by death, when consented to by the district attorney in open court and approved by the court, the plea may specify a punishment less than death. The specified punishment, or any lesser punishment, may be imposed by a single judge."

penalty. Only the jury could decree death. The court could not. *Jackson* involved the same general scheme. There was no provision for imposing the death penalty if the defendant pleaded guilty. Such a penalty structure was found to chill the defendant's Fifth Amendment right not to plead guilty and, as well, his Sixth Amendment right to demand a jury trial and, therefore, was unconstitutional.[2] Also, according to Spillers, the Equal Protection Clause was violated since the statutes allowed the jury to impose a greater penalty than the court for the same offense.

The statutory provisions applicable to this case are significantly different than those with which we were concerned in *Spillers*. Here, had the defendant entered a plea of not guilty and been tried before a jury or pleaded guilty and been tried before a three-judge court, either could have directed the penalty of death. NRS 200.030(3); NRS 174.045. There was no disparity in the power to punish. The defendant selected neither of those alternative procedures. Instead, he pursued NRS 174.-065(2) which allowed him, by his plea, to specify a punishment less than death which would be imposed when consented to by the district attorney and approved by the court.

NRS 174.065(2) does, of course, encourage plea bargaining in those cases where the penalty may be death. This does not condemn nor invalidate the statute. A guilty plea is not compelled and invalid under the Fifth Amendment simply because it is motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than to face a wider range of possibilities extending from acquittal to conviction and a higher penalty. Brady v. United States, 397 U.S. 742 (1970); North Carolina v. Alford, 400 U.S. 25 (1970); Parker v. North Carolina, 397 U.S. 790 (1970). Neither does the defendant's fear of death invalidate his guilty plea if he voluntarily, knowingly and understandingly consented to the imposition of a prison sentence. North Carolina v. Alford, supra. The first claim of error is without merit.

2.    Conger alleges that a plea bargaining agreement was not kept, and that his pleas of guilty should be set aside for that

---

[2]United States v. Jackson, supra, appears to have been limited by later decisions. See: North Carolina v. Alford, 400 U.S. 25 (1970); Parker v. North Carolina, 397 U.S. 790 (1970). It has been suggested that *Jackson* now is limited to those few cases where the defendant attacks an allegedly coercive statutory scheme before he enters his plea. Note, 44 Temp. L.Q., 540 (1971).

reason. He claims to have been told by his attorney that the federal bank robbery charge would be dismissed if he was found guilty of the state charges.

When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise or agreement must be fulfilled. Santobello v. New York, 404 U.S. 257 (1971). This case, however, does not fall within the Santobello doctrine. The record does not show a plea bargaining agreement between the state prosecutor and Conger or his counsel. Indeed, Conger alleges no wrongdoing on the part of the State, nor that the prosecutor or his agents made any promises which later were broken. Neither does he suggest collusion between the state and federal prosecutors. The record establishes unequivocally that the negotiations of Conger's counsel with the district attorney were independent of any discussions he may have had with federal authorities. Moreover, even as to the federal prosecution for bank robbery, the record reflects only the possibility that the charge would be dismissed if the consent of the Department of Justice could be secured. Consequently, this claim of error must fail.

Affirmed.

Mowbray, Gunderson, Batjer, and Zenoff, JJ., concur.