OPINION OF THE COURT
Steven W. Fisher, J.
In Matter of Hynes v Tomei (92 NY2d 613, 629 [1998], cert denied 527 US 1015), our Court of Appeals ruled that “a defendant may not plead guilty to first degree murder while a notice of intent to seek the death penalty is pending.” The Court predicted that its holding would “reduce the flexibility of both prosecutors and defendants who wish to plea bargain in capital cases * * * [and] may well have an ironic twist in that capital defendants will have fewer opportunities to avoid the possibility of the death penalty” (supra, at 629). The issue in this case is whether and to what extent the Court’s holding does in fact impede effective plea bargaining in capital cases in New York.
I
Steven Smelefsky was charged in two indictments with murder in the first degree and lesser offenses in connection with two unrelated homicides. He would later describe both killings in court: in the early morning hours of May 12, 1998, Smelef-sky and Rubin Ortega lay in wait for 92-year-old Louis Thu-mudo in the Queens garage he rented. “When Mr. Thumudo showed up, Rubin grabbed him from behind and then we proceeded to rob him of his money, his jewelry, his wallet. Then we taped Mr. Thumudo’s ankles with duct tape, his wrist, as well as his mouth, we wrapped him in a tarp and we put him in the trunk of his car. I then drove Mr. Thumudo to Pennsylvania and we placed him in an abandoned construction site with the intent that Mr. Thumudo die from lack of food and water.”
Some 2V2 months later, on the evening of July 31, 1998, Smelefsky and Keith Khoesel entered the Queens apartment of George Capobianco. When a dispute arose, Mr. Capobianco ordered them to go. “[A]fter George asked us to leave, Keith hit George over the head with a bottle and a fight broke out. I proceeded to stab George several times with the intent of killing George. We searched the apartment, found money, jewelry, a wallet; we took George’s keys and we fled.”
The Thumudo murder was charged in indictment No. 3263/ 98; the Capobianco murder was charged in indictment No. *13 3262/98. In each case, pursuant to CPL 250.40, the District Attorney timely filed and served upon Smelefsky a written notice of intent to seek the death penalty.[1]
All defense motions were scheduled to be submitted by September 29, 1999. But on July 26, 1999, the court received a joint request from the District Attorney’s Office and counsel for Smelefsky to advance the cases for possible disposition. Smelef-sky was ordered produced in court on July 28, 1999, and a conference was held in chambers prior to the call of the cases.
At the conference, the attorneys revealed that, following exhaustive negotiations, a plea agreement had been reached. Subject to the court’s approval, Smelefsky would plead guilty to first degree murder and lesser offenses in the Capobianco case, and to second degree murder and a lesser offense in the Thumudo case. He was prepared to accept a sentence of life without parole on the first degree murder count, and lesser sentences — some consecutive, some concurrent — on the remaining counts.
Aware of the holding in Matter of Hynes v Tomei (supra), however, the District Attorney expressed discomfort at the prospect of withdrawing the notice of intent to seek the death penalty prior to the plea. He was concerned that, notwithstanding defense counsel’s assurances to the contrary, Smelefsky might renounce the agreement once the notice was withdrawn, and the People would be barred from refiling it.
The District Attorney therefore suggested a “conditional” withdrawal of the notice, much like the one in People v Van Dyne (179 Misc 2d 467 [Monroe County Ct 1999, Marks, J.]). There, the prosecutor “specifically condition [ed] the withdrawal of the notice of intent to seek the death penalty upon the entry of a plea of guilty and reserve [d] the right to reinstate the notice if the plea is not entered or is withdrawn” (supra, at 469). Following this “conditional” withdrawal, Van Dyne entered a guilty plea to first degree murder upon a promised sentence of life without parole.[2]
The court rejected the District Attorney’s proposal, first because conditional plea bargains are generally disfavored in *14 New York (see, e.g., People v Di Donato, 87 NY2d 992, 993 [1996]; People v Thomas, 53 NY2d 338 [1981]; People v O'Brien, 84 AD2d 567 [2d Dept 1981], affd 56 NY2d 1009), and second because a “conditional” withdrawal seemed irreconcilable with the unambiguous statutory provision that “[o]nce withdrawn [a] notice of intent to seek the death penalty may not be refiled” (CPL 250.40 [4]). Nevertheless, a procedure acceptable to both sides was formulated.
When the cases were called in court, defense counsel announced that her client had authorized her to offer a guilty plea to murder in the first degree, murder in the second degree, and burglary in the first degree, in full satisfaction of the indictment relating to the death of George Capobianco. Counsel acknowledged that any guilty plea to less than the entire indictment requires the prosecutor’s consent (see, CPL 220.10 [4]), and that a guilty plea to the charge of murder in the first degree is permissible only if no notice of intent to seek the death penalty is pending (see, Matter of Hynes v Tomei, supra). Therefore, in the first instance, the defendant asked the prosecutor not only to consent to the plea but to make it possible by withdrawing the notice of intent.
The prosecutor replied that the People would be willing to forego seeking the death penalty in the Capobianco case if they were assured that the defendant would receive a sentence that did not allow for the possibility of parole, and if the defendant gave a full and truthful allocution and waived his right to appeal. Defense counsel responded that the terms were acceptable to the defendant and that he was prepared to be allocuted.
Under questioning by the court, Smelefsky confirmed his desire to end the case by pleading guilty to the three charges in return for promised sentences of life without parole on the first degree murder count to run concurrently with two consecutive sentences of 25 years to life on the second degree murder count and 10 years on the first degree burglary count. He stated that he had discussed the matter at length with his attorneys, and that he was satisfied with their services. He expressed his understanding of the rights he would be waiving if he were permitted to plead guilty, including the right to remain silent, to cross-examine witnesses, and to offer evidence in his own behalf.
*15 He said he understood that, if he went to trial and were convicted of first degree murder, the case would move into a sentencing proceeding at which he would be entitled to present mitigating evidence including a statement in his own behalf. He said he was aware that, at the conclusion of the sentencing proceeding, the jury would direct a sentence of either death or life without parole, or would report its inability to agree unanimously with respect to sentence in which case he would receive a parole-eligible term of between 20 and 25 years to life.
The defendant stated that he was not under the influence of medications, alcohol, or drugs, and was feeling well. He affirmed that he had received no off-the-record threat or promise to induce the plea, and that it was the product of his own free choice. Finally, he described his participation in, and the circumstances surrounding, the Capobianco homicide.
The court then turned to the prosecutor who was apparently satisfied with the allocution. In one breath, he consented to the plea, withdrew the notice of intent to seek the death penalty, and joined in the defendant’s application that the plea be accepted and entered.[3] The court immediately granted the application, and ordered the plea entered.
Thereafter, with the District Attorney’s consent and following a full allocution, the defendant entered a guilty plea to second degree murder and first degree robbery in full satisfaction of the indictment relating to the death of Louis Thumudo. The defendant was promised consecutive sentences of 25 years to life and 10 years to run consecutively to the sentences promised on the Capobianco indictment. Smelefsky was read and signed a waiver of appeal in each case and, upon his admission, was adjudged a second violent felony offender. The cases were then adjourned for sentence.
II
Notwithstanding Matter of Hynes v Tomei (supra), the parties here plainly felt free to engage in extensive plea negotiations while the notice of intent to seek the death penalty was pending. Moreover, the procedure they followed in court allowed them to effect their plea bargain with little difficulty. The question, then, is whether the manner in which the plea was negotiated, proffered, or accepted in some way violated the holding of the Court of Appeals. In my view, it did not.
*16 In United States v Jackson (390 US 570 [1968]), the Supreme Court entertained a challenge to what was then the Federal Kidnaping Act (18 USC § 1201 [a]). The Act provided that, if the kidnap victim had not been liberated unharmed, the sentence upon conviction for the crime would be death “if the verdict of the jury shall so recommend”, or else a term of imprisonment. Since a death sentence could be imposed only upon the recommendation of the jury sitting at a unified trial, the statute in effect invited defendants to insulate themselves from the death penalty by either pleading guilty or trying the case to the court without a jury. The Supreme Court held this unconstitutional, not because the statute necessarily coerced guilty pleas, but because it needlessly encouraged them and thereby imposed an impermissible burden upon the assertion of the constitutional right to a jury trial (see, 390 US, at 583).
As enacted in 1995, New York’s death penalty law also provided that only a jury could direct a sentence of death (see, CPL 400.27). And since the law made no provision for the selection of a jury to decide sentence after a guilty plea, only defendants whose guilt had been determined at a jury trial were exposed to the death penalty. Guilty pleas could be accepted to first degree murder, but only with the permission of the court and the consent of the People, and only when the agreed-upon sentence was other than death (see, CPL 220.10 [5] [e]).[4]
In Matter of Hynes v Tomei (92 NY2d 613 [1998], cert denied 527 US 1059, supra), the Court of Appeals concluded that New York’s statutory structure was unconstitutional under Jackson (supra), but it departed from the Supreme Court in its choice of remedy. In Jackson, the Supreme Court held that the unconstitutional clause authorizing capital punishment was sev-erable from the rest of the kidnaping statute, and the Court chose to strike only the death penalty clause (see, United States v Jackson, supra, at 586). In Matter of Hynes v Tomei (supra), the Court of Appeals also found the law severable, but elected to strike not the provisions authorizing the death penalty but those governing plea bargaining.
Thus, the Court granted a judgment striking CPL 220.10 (5) (e) and 220.30 (3) (b) (vii) as unconstitutional. The Court wrote that, “[u]nder the resulting statute, a defendant may not plead guilty to first degree murder while a notice of intent to seek *17 the death penalty is pending * * * [but that] excision of the unconstitutional provisions does not prevent pleas of guilty to first degree murder when no notice of intent to seek the death penalty is pending” (Matter of Hynes v Tomei, 92 NY2d, supra, at 629).
Ill
The implications of this holding have been the subject of some debate and confusion (cf., People v Francois, NYLJ, Feb. 17, 1999, at 38, col 5 [Dutchess County Ct, Dolan, J.]). It is helpful, therefore, to examine what the Supreme Court said in Jackson (supra), and how the Court of Appeals interpreted it.
Jackson (supra) never suggested that the possibility of a death sentence exerts so coercive an influence on capital defendants as to render their guilty pleas involuntary. To the contrary, two years after Jackson the Supreme Court wrote that “a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty” (Brady v United States, 397 US 742, 755 [1970]). Indeed, later that same year the Court upheld the guilty plea of a defendant who not only said he was pleading guilty to avoid the death penalty but insisted that he was innocent of the crime (see, North Carolina v Alford, 400 US 25 [1970]).
Likewise, in Matter of Hynes v Tomei (supra), the Court of Appeals never said that a guilty plea cannot be accepted while the possibility of a death sentence remained in the case. In fact, the Court seemed implicitly to recognize that prosecutors may use a threat to seek the death penalty, or a promise to forego it, as a bargaining chip in plea negotiations.
Observing that “nothing in Jackson prohibits imposing different penalties for different crimes”, the Court wrote that its holding would not prevent a defendant from pleading guilty “to another offense not punishable by death, even when a notice of intent to seek the death penalty is pending” (Matter of Hynes v Tomei, 92 NY2d, supra, at 629). Thus, it appears that a New York prosecutor can file a notice of intent and threaten to seek the death penalty unless the defendant agrees to plead guilty to murder in the second degree or any other noncapital offense. In the case at bar, for example, the prosecutor could have presented Smelefsky with the choice of either accepting pleas carrying a combined sentence of at least 70 years to life or facing trial and a possible death sentence.
Apparently, the Court of Appeals saw the Jackson problem as arising only when the maximum sentence prescribed for a *18 single crime is different depending upon how guilt is determined. That was the constitutional defect in the Federal Kidnaping Act because it provided that the maximum sentence for the crime was death if guilt were determined at a jury trial, but imprisonment if guilt were determined through a guilty plea or a bench trial.
Under New York law, the maximum sentence for first degree murder depended on whether the prosecutor filed a notice of intent to seek the death penalty. If such a notice were filed and remained pending, the maximum sentence for murder in the first degree was death for defendants whose guilt was determined at a jury trial, but life without parole for defendants who pleaded guilty. On the other hand, if the notice had not been timely filed or was withdrawn, the maximum sentence for first degree murder was life without parole regardless of whether the defendant was convicted after trial or on a guilty plea.
The Court concluded, therefore, that the Jackson problem arose in New York only when a notice of intent was pending and that, in such circumstances, guilty pleas to first degree murder could not be accepted. In contrast, the Court ruled that defendants would not be prevented from entering such pleas when notice was not pending “since defendants in that situation face the same maximum sentence regardless of how they are convicted” (Matter of Hynes v Tomei, supra, at 629).
IV
Although a notice of intent was pending against the defendant here, the parties did not violate Matter of Hynes v Tomei (supra) by engaging in serious plea negotiations. Among other possibilities, they could have reached an agreement not involving a plea to first degree murder and therefore not requiring the withdrawal of the notice of intent at all. Moreover, since a filed notice of intent may be withdrawn “at any time” (CPL 250.40 [4]), a defendant must have the opportunity to persuade the prosecutor to withdraw it, whether or not the inducement includes a guilty plea.
The agreement reached here involved a guilty plea to first degree murder, and therefore it could not have been given effect while the notice of intent remained pending. To be sure, the notice could have been withdrawn before the plea was proffered by the defendant in court. But where the agreed-upon sentence is life without parole, many prosecutors are reluctant to withdraw the notice of intent prior to the plea and to rely *19 simply upon the defendant’s representation that he or she will thereafter plead guilty and accept that sentence. Because a withdrawn notice may never be refiled (see, CPL 250.40 [4]), prosecutors understandably fear that, following an apparently irreversible withdrawal of the notice, the defendant will renege on the promise, renounce the bargain, and refuse to enter the plea.
In the case at bar, because of that expressed concern, the prosecutor was permitted to withhold his consent to the plea and his withdrawal of the notice of intent until after the defendant had proffered his plea to the court and had undergone a complete allocution. Because that sequence narrowed the window of opportunity for the defendant to renounce the bargain, it fortified the prosecutor’s resolve to go forward with it. And since the defendant claimed also to be seeking the disposition, he could have no legitimate complaint that the sequence unfairly infringed upon his right to renege.
Moreover, the procedure was not inconsistent with the Court of Appeals holding that “a defendant may not plead guilty to first degree murder while a notice of intent to seek the death penalty is pending.” (Matter of Hynes v Tomei, supra, at 629.)
In New York, a guilty plea carrying a promised sentence cannot be entered without the permission of the court, even where both the prosecution and the defense recommend it (see, CPL 220.60). Thus, it is the acceptance by the court, and not the proffer by the defendant, that makes a guilty plea cognizable. As the Court of Appeals has said, “there is no basis for judicial recognition of a plea bargain until it is concluded by entry on the record” (People v Hood, 62 NY2d 863, 865 [1984]). And the Supreme Court itself has held that a guilty plea does not implicate any constitutionally protected interest of a defendant until it is “embodied in the judgment of a court” (Mabry v Johnson, 467 US 504, 507 [1984]).
I hold, therefore, that a guilty plea to murder in the first degree is valid under Matter of Hynes v Tomei (supra) so long as no notice of intent to seek the death penalty is pending when the court accepts and enters the plea (cf., People v Edwards, 180 Misc 2d 564 [Schoharie County Ct, Bartlett, J.]).[5]
*20 V
The relatively short history of New York’s new death penalty law has demonstrated that trials of capital cases are often long and costly, exacting a considerable price on jurors, witnesses, and the system as a whole. Where, as in the case at bar, both the prosecutor and the capital defendant agree that a trial is unnecessary because a guilty plea with a sentence of life without parole would be a fair and appropriate resolution, a mechanism ought to exist to allow the disposition to be taken.
Plea bargaining has long been acknowledged as both desirable and essential to the operation of our criminal justice system (see, e.g., Santobello v New York, 404 US 257, 261 [1971]; People v Selikoff, 35 NY2d 227 [1974], cert denied 419 US 1122), and recognition of its significance has grown markedly in the years following Jackson (supra; see, e.g., Bordenkircher v Hayes, 434 US 357 [1978]; Corbitt v New Jersey, 439 US 212 [1978]). It is certainly no less important in capital cases where the mutuality of advantage may be greatest.
Because the procedure adopted in this case seems to solve the Jackson problem, it allows the plea bargaining process to operate effectively in capital cases. And the procedure itself is simple and straightforward: (1) the defendant proffers the plea and asks the District Attorney to consent to it and to withdraw the notice of intent; (2) the District Attorney expresses a willingness to do so, provided that an agreed-upon sentence will be imposed and the defendant gives a full and truthful al-locution; (3) the defendant then undergoes a full allocution; (4) the District Attorney consents to the plea, withdraws the notice of intent to seek the death penalty, and joins in the defendant’s motion that the plea be accepted; and (5) the court grants the motion, accepts the plea, and orders it entered.
Under this procedure or one like it, the holding in Matter of Hynes v Tomei (supra) should not present a significant obstacle to appropriate plea bargaining in capital cases. And that fact *21 will undoubtedly prove beneficial, not only to the parties involved, but to society as a whole.
The defendant’s plea is accepted.

. Neither Rubin Ortega, named with Smelefsky in indictment No. 3263/ 98, nor Keith Knoesel, named with him in indictment No. 3262/98, was charged with first degree murder.

. The court in Van Dyne (supra) did not pass upon whether a withdrawal of a notice of intent could in fact be “conditional.” Instead the court held only that “the plea may be accepted based upon the defendant’s knowing, intelligent and voluntary waiver of rights and consistent with the recent decision of the Court of Appeals” (People v Van Dyne, supra, at 470). Because *14 the defendant fulfilled the bargain and entered the plea after notice of intent was “conditionally” withdrawn, the court was never called upon to decide whether the notice could have been reinstated had the plea not been entered.

. There was no objection to the fact that the withdrawal of the notice of intent was oral rather than written (see, CPL 250.40 [4]).

. Bench trials in capital cases are constitutionally prohibited in New York (see, NY Const, art I, § 2).

. The procedure followed here is distinguishable from the North Carolina capital pleading scheme struck down under Jackson (supra) in Atkinson v North Carolina (403 US 948 [1971]). Under North Carolina’s statutory framework as it then existed, a capital defendant could tender in writing a signed guilty plea which, if accepted by the State and approved by the court, *20 had the same effect as a jury’s binding recommendation that a sentence of life imprisonment rather than death be imposed (see, State v Atkinson, 275 NC 288, 167 SE2d 241, 258-259 [1969], revd 403 US 948). Regardless of whether the State accepted the plea, however, if the court rejected it, the defendant would proceed to trial and face a possible sentence of death. Thus, there were different maximum sentences for the crime until a guilty plea was actually accepted and entered by the court. In contrast, under the procedure at bar, once the prosecutor withdraws the notice of intent, the defendant faces a maximum penalty of life without parole regardless of whether the court accepts the plea or forces the defendant to trial. Hence, the Jackson problem is removed prior to the entry of the plea.