*620
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Thirty years ago, the United States Supreme Court struck down the death penalty provision of the Federal Kidnaping Act (18 USC § 1201 [a]), which allowed a defendant to be sentenced to death only after a jury trial. The Supreme Court invalidated the provision because, by needlessly encouraging guilty pleas and jury waivers to avoid death sentences, it impermissibly burdened defendants’ Fifth Amendment right against self-incrimination and Sixth Amendment right to a jury trial
 
 (United States v Jackson,
 
 390 US 570). Despite the passage of three decades, a plethora of decisions involving the death penalty and a sea change in plea bargaining, the Supreme Court has never overruled
 
 Jackson,
 
 which binds this Court. Indeed, every other death penalty State has fit its capital murder plea-bargaining procedures within the rationale of
 
 Jackson.
 

 Three years ago, the New York State Legislature enacted a capital punishment statute that — like the Federal Kidnaping Act — allows a defendant to be sentenced to death only after a jury trial (L 1995, ch 1). Bench trials are not permitted in capital cases
 
 (see,
 
 NY Const, art I, § 2), and the statute bars imposition of a death sentence upon a guilty plea
 
 (see,
 
 CPL 220.10 [5] [e]; 220.30 [3] [b] [via]; 220.60 [2] [a]). The New York law thus explicitly provides two levels of penalty for the same offense, imposing death only on those who assert innocence and proceed to trial.
 
 [1]
 
 Defendants before us now challenge the plea provisions of the New York statute as violative of their Fifth and Sixth Amendment rights, relying on
 
 Jackson.
 

 Both trial courts held the plea provisions facially unconstitutional under
 
 Jackson (People v Hale,
 
 173 Misc 2d 140;
 
 People v Mateo,
 
 175 Misc 2d 192). In separate declaratory judgment actions, the Appellate Division of the Second and Fourth Departments subsequently declared the provisions constitutional (Ma
 
 tter of Hynes v Tomei,
 
 237 AD2d 52;
 
 Matter of Relin v Connell,
 
 251 AD2d 1041). We are convinced that
 
 Jackson
 
 compels the contrary result, and therefore reverse the Appellate Division orders and declare CPL 220.10 (5) (e) and 220.30 (3) (b) (vii) unconstitutional. CPL 220.60 (2) (a), in the absence of the other two challenged provisions, is constitutional. Because the unconstitutional provisions are severable, the remainder of the statute is also unaffected by our ruling.
 

 
 *621
 
 I.
 

 The Federal Kidnaping Act considered in
 
 Jackson
 
 provided:
 

 “Whoever knowingly transports in interstate * * * commerce, any person who has been unlawfully * * * kidnaped * * * and held for ransom * * * or otherwise * * * shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.”
 

 Because the Act authorized the death penalty only on the recommendation of a jury, while a defendant convicted of the same offense on a guilty plea or by a Judge escaped the threat of capital punishment, the Supreme Court concluded that the Act “needlessly” encouraged guilty pleas and jury waivers
 
 (United States v Jackson, supra,
 
 at 583;
 
 see also, Pope v United States,
 
 392 US 651 [death sentence imposed under the Federal Bank Robbery Act (18 USC § 2113 [e]) vacated for the same reason]). The Court acknowledged that restricting the death penalty to cases in which a jury recommends it is a legitimate goal, and that such a restriction would likely decrease the frequency of capital punishment. However, the Court concluded these considerations did not save the Act from constitutional infirmity. While the Act’s chilling effect on a defendant’s exercise of the Fifth Amendment right against self-incrimination and Sixth Amendment right to a jury trial may have been incidental, the effect was also “unnecessary and therefore excessive,” since Congress could have achieved its goals by allowing juries to sentence defendants to the full range of punishments regardless of how guilt was determined
 
 (id.,
 
 at 582-583).
 

 Shortly after
 
 Jackson,
 
 this Court invalidated two provisions of the former Code of Criminal Procedure that required waiver of a jury trial in order to receive the benefit of youthful offender treatment
 
 (see, People v Michael A. C.,
 
 27 NY2d 79). Although respondents who refused to waive a jury trial were not subject to the death penalty, they were exposed to longer prison sentences than those prosecuted as youthful offenders. Drawing a parallel to
 
 Jackson,
 
 this Court held that “a procedure which offers an individual a reward for waiving a fundamental
 
 *622
 
 constitutional right, or imposes a harsher penalty for asserting it, may not be sustained”
 
 (id.,
 
 at 86).
 
 [2]
 

 II.
 

 New York’s death penalty statute authorizes a District Attorney to file a notice of intent to seek the death penalty against a defendant charged with murder in the first degree
 
 (see,
 
 Penal Law § 125.27; CPL 250.40). Upon conviction by a jury, a capital defendant faces a separate sentencing proceeding before a jury to determine whether the penalty imposed will be death or life imprisonment without parole
 
 (see,
 
 CPL 400.27). The statute affords a defendant the opportunity to ensure a maximum sentence of life without parole by pleading guilty pursuant to the following provisions:
 
 *623
 
 For all other crimes in New York only one top sentence is prescribed by statute.
 

 
 *622
 
 “A defendant may not enter a plea of guilty to the crime of murder in the first degree as defined in section 125.27 of the penal law; provided, however, that a defendant may enter such a plea with both the permission of the court and the consent of the people when the agreed upon sentence is either life imprisonment without parole or a term of imprisonment for the class A-I felony of murder in the first degree other than a sentence of life imprisonment without parole” (CPL 220.10 [5] [e]; 220.30 [3] [b] [vii]).
 

 “A defendant who has entered a plea of not guilty to an indictment may, with both the permission of the court and the consent of the people, withdraw such plea at any time before the rendition of a verdict and enter: (a) a plea of guilty to part of the indictment pursuant to subdivision three or four but subject to the limitation in subdivision five of section 220.10” (CPL 220.60 [2] [a]).
 

 
 *623
 
 Thus, like the invalidated Federal Kidnaping Act provision, New York’s death penalty statute explicitly provides for the imposition of the death penalty only upon a jury verdict. As a result, under the New York statute, only those defendants who exercise the Fifth Amendment right against self-incrimination and Sixth Amendment right to a jury trial put themselves at risk of death. Nevertheless, respondents argue that the New York statute is distinguishable from the Federal Kidnaping Act in several ways. We conclude that the distinctions are without a constitutionally cognizable difference.
 

 First, under the challenged New York provisions, a defendant can plead guilty to first degree murder, with agreement on the sentence to be imposed, only with the permission of the court and consent of the People
 
 (see,
 
 CPL 220.10 [5] [e]; 220.30 [3] [b] [vii]). Because a defendant- does not have unilateral control of the plea process, respondents argue, the statute never gives a defendant the choice between facing a jury and risking death on the one hand, and pleading guilty and avoiding death on the other. Therefore, respondents urge, the statute cannot “needlessly” encourage guilty pleas.
 

 The Supreme Court, however, has found approval of a trial court and a prosecutor irrelevant to the
 
 Jackson
 
 analysis. Defendants prosecuted under the Federal Kidnaping Act could not enter a plea of guilty as of right, since Federal Trial Judges had discretion to reject guilty pleas and jury trial waivers. This judicial involvement did not cure the constitutional problem: the statute’s infirmity was not coercion of guilty pleas and jury waivers but needless encouragement of them
 
 (United States v Jackson, supra,
 
 at 583). Even though not every guilty plea to a charge under the Act was necessarily involuntary, the statute still impermissibly burdened defendants’ constitutional rights
 
 (id.).
 

 [3]
 

 The Supreme Court’s subsequent application of
 
 Jackson
 
 further demonstrates that the People’s involvement in the plea
 
 *624
 
 process fails to distinguish away
 
 Jackson’s
 
 prevailing rationale. Three years after Jackson, the Supreme Court declared unconstitutional North Carolina’s capital pleading scheme, which required the approval of both the prosecutor and the court for a defendant to plead guilty. Under the challenged North Carolina statute, if a defendant charged with capital murder tendered a signed plea of guilty, the prosecutor, with the court’s approval, could accept or reject the plea. If the plea were rejected, the trial would “proceed upon a plea of not guilty and the tender of the plea of guilty would have no legal significance,” exposing the defendant to the death penalty
 
 (State v Atkinson,
 
 275 NC 288, 317, 167 SE2d 241, 259,
 
 revd
 
 403 US 948). By contrast, if the plea were accepted, the effect would be a sentence of life imprisonment. In June 1971,
 
 after
 
 it had decided
 
 Brady, Alford
 
 and
 
 Parker,
 
 the Supreme Court reversed five death sentences imposed under this statute, in a summary disposition that, without explanation, simply cited
 
 Jackson'.
 

 “Judgments, insofar as they impose the death sentence, reversed,
 
 United States
 
 v.
 
 Jackson,
 
 390 U.S. 570 (1968),
 
 Pope
 
 v.
 
 United States,
 
 392 U.S. 651 (1968), and cases remanded for further proceedings”
 
 (Atkinson v North Carolina,
 
 403 US 948;
 
 Roseboro v North Carolina,
 
 403 US 948;
 
 Hill v North Carolina,
 
 403 US 948;
 
 Williams v North Carolina,
 
 403 US 948;
 
 Sanders v North Carolina,
 
 403 US 948).
 

 Thus, the need to obtain approval from the People and the court will not save plea provisions that otherwise violate
 
 Jackson (see also, People v Michael A. C.,
 
 27 NY2d 79,
 
 supra
 
 [Code of Criminal Procedure provisions unconstitutional on
 
 Jackson
 
 grounds, even though court approval was required, with or without the recommendation of the Grand Jury or District Attorney]).
 
 [4]
 

 Second, respondents argue that the challenged New York provisions are distinguishable from the Federal Kidnaping Act because they merely codify permissible plea bargaining, which was not at issue in
 
 Jackson.
 
 Subsequent to
 
 Jackson,
 
 both the Supreme Court and this Court have acknowledged the legitimacy and desirability — indeed, the necessity — of plea bargaining
 
 (see, Santobello v New York,
 
 404 US 257;
 
 People v Selikoff,
 
 35 NY2d 227,
 
 cert denied
 
 419 US 1122). Plea bargaining serves
 
 *625
 
 important functions for both prosecutors and defendants, such as individualized justice, leniency and economy
 
 (State v Forcella,
 
 52 NJ 263, 245 A2d 181,
 
 read in part sub nom. Funicello v New Jersey,
 
 403 US 948). A State clearly may encourage guilty pleas by offering benefits to defendants in return for a guilty plea
 
 (Corbitt v New Jersey,
 
 439 US 212, 219). Furthermore, plea bargaining becomes no less lawful or desirable when it is codified in statutory form
 
 (see, id.,
 
 at 224, n 14).
 

 While plea bargaining is permissible, the Supreme Court in
 
 Jackson
 
 prohibited statutes that “needlessly” encourage guilty pleas, which are not constitutionally protected, by impermissibly burdening constitutional rights. Given the availability of alternatives that do not impermissibly burden defendants’ constitutional rights, the plea provisions of the statute before us “cannot be justified by [an] ostensible purpose” such as the facilitation of plea bargaining
 
 (United States v Jackson, supra,
 
 at 582-583).
 

 Respondents rely heavily on
 
 Corbitt,
 
 in which the Supreme Court held that it is constitutionally permissible to offer a defendant the possibility of escaping the most severe penalty by pleading guilty
 
 (see, Corbitt v New Jersey, supra,
 
 at 217-219). The New Jersey statute at issue in
 
 Corbitt,
 
 however, provided for the same maximum sentence — life imprisonment — regardless of a defendant’s plea. While a lesser sentence was permitted for those defendants who pleaded guilty, it was not guaranteed. Thus, the statute survived constitutional scrutiny because it did “not reserve the maximum punishment for murder for those who insist on a jury trial”
 
 (id.,
 
 at 217). This situation is readily distinguishable from the challenged New York provisions, which indeed prescribe a lesser agreed-upon sentence for those who plead guilty. In the words of
 
 Jackson,
 
 “the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die”
 
 (United States v Jackson, supra,
 
 at 581;
 
 see, Corbitt v New Jersey, supra,
 
 at 217).
 
 [5]
 

 Finally, respondents point to the bifurcated capital trial procedure in New York, by which a jury that finds a defendant
 
 *626
 
 guilty determines the sentence in a separate proceeding
 
 (see,
 
 CPL 400.27). By contrast, a defendant prosecuted under the Federal Kidnaping Act faced a unitary trial. Respondents suggest that under the bifurcated scheme, a defendant may have an opportunity to agree to a sentence after the guilt phase of the trial, and thus after exercising the rights to maintain innocence and to have a jury determine guilt.
 

 This does not alleviate the
 
 Jackson
 
 problem, however, because bifurcation does not eliminate the statutory framework that allows the possibility of death only after a jury trial. Capital defendants under the New York statute who are awaiting trial and are offered a plea are still faced with the choice
 
 Jackson
 
 declared unconstitutional: exercise Fifth and Sixth Amendment rights and risk death, or abandon those rights and avoid the possibility of death. Furthermore, as respondents forcefully assert in trying to distinguish the challenged provisions from the Federal Kidnaping Act, a prosecutor is not required to accept a defendant’s guilty plea. In fact, a prosecutor may be less willing to forego pursuit of the death penalty after a defendant’s guilt has been established beyond a reasonable doubt. Thus, before deciding whether to proceed to trial, a defendant cannot know whether a deal on the sentence to be imposed will be available after a guilty verdict and before sentencing, and bifurcation does not eliminate the “chilling effect” on a defendant’s constitutional rights to maintain innocence and demand a jury trial
 
 (United States v Jackson, supra,
 
 at 582).
 

 In sum, respondents’ attempts to distinguish New York’s death penalty statute from the death penalty invalidated by the Supreme Court in
 
 Jackson
 
 fail. We recognize that New York’s death penalty statute carries a strong presumption of constitutionality, as do all statutes
 
 (see, People v Davis,
 
 43 NY2d 17, 30,
 
 cert denied
 
 435 US 998,
 
 rearg dismissed
 
 61 NY2d 670). However, the New York provisions are unconstitutional for the same reason as the Federal Kidnaping Act: by statutory mandate, the death penalty hangs over only those who exercise their constitutional rights to maintain innocence and demand a jury trial. Thus,
 
 Jackson
 
 compels us to invalidate these provisions, just as it has compelled other State high courts to invalidate their capital plea provisions with the same constitutional infirmity
 
 (see, e.g., State v Johnson,
 
 134 NH 570, 595
 
 *627
 
 A2d 498 [1991],
 
 supra; Commonwealth v Colon-Cruz,
 
 393 Mass 150, 470 NE2d 116 [1984];
 
 State v Frampton,
 
 95 Wash 2d 469, 627 P2d 922 [1981];
 
 State v Funicello,
 
 60 NJ 60, 286 A2d 55 [1972],
 
 cert denied sub nom. New Jersey v Presha,
 
 408 US 942;
 
 see also, Spillers v State,
 
 84 Nev 23, 436 P2d 18 [1968],
 
 supra
 
 [decided prior to the Supreme Court’s decision in
 
 Jackson]).
 

 By contrast, the death penalty statutes of States that have rejected a
 
 Jackson
 
 challenge, with one exception, provide for the possibility of a death sentence upon a guilty plea
 
 (see, e.g., State v Mann,
 
 1996 WL 465764, 1996 Tenn Grim App LEXIS 508,
 
 affd
 
 959 SW2d 503,
 
 cert denied —
 
 US —, 118 S Ct 2376;
 
 Conger v Warden,
 
 89 Nev 263, 510 P2d 1359). The exception, Arkansas, avoided a
 
 Jackson
 
 problem because the Trial Judge, not the jury, made the final determination of whether the death penalty would be imposed, and because guilty pleas were permitted only after the prosecutor waived the death penalty
 
 (see, e.g., Ruiz v State,
 
 275 Ark 410, 630 SW2d 44,
 
 cert denied
 
 459 US 882).
 

 III.
 

 The question remains whether the entire death penalty statute must be invalidated, as defendants urge, or whether the challenged provisions may be severed, leaving the statute otherwise operational. The answer depends on whether “the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part ex-scinded, or rejected altogether”
 
 (People ex rel. Alpha Portland Cement Co. v Knapp,
 
 230 NY 48, 60 [Cardozo, J.],
 
 rearg denied
 
 231 NY 516,
 
 cert denied sub nom. State Tax Commr. v People ex rel. Alpha Portland Cement Co.,
 
 256 US 702). If removing particular provisions while leaving the remainder intact would result in a law the Legislature would not have intended, the entire statute must be stricken
 
 (see, e.g., Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation,
 
 75 NY2d 88, 94).
 

 In arguing that the death penalty itself should be stricken, defendants seek support from
 
 Jackson,
 
 in which the Supreme Court struck the death penalty from the Federal Kidnaping Act. In that statute, it was the death penalty provision itself, which was added two years after enactment of the original statute, that caused the constitutional infirmity. When enacted in 1932, the Federal Kidnaping Act did not provide for capital punishment; it merely defined the Federal crime of kidnaping and set the punishment as imprisonment for a term of years,
 
 *628
 
 to be decided by the trial court
 
 (see,
 
 47 US Stat 326). Regardless of how a defendant was convicted under the original Act, the potential penalties were the same.
 

 The Act was amended in 1934, however, to change the penalty structure, providing for the imposition of the death penalty only on a jury recommendation, but a prison term otherwise
 
 (see,
 
 48 US Stat 781). It was the addition of the death penalty in this manner, which resulted in different levels of punishment depending on whether defendants exercised their constitutional rights, that rendered the statute unconstitutional. Therefore, it was only through excision of the Act’s death penalty clause that the constitutional infirmity could be cured. The result was the same sentencing system as the one contained in the original Act — those convicted would be sentenced by the court to imprisonment for a term of years. At the same time, by removing only the death penalty clause, the Court was able to preserve the purpose of the Act — to make interstate kidnaping a Federal crime.
 

 In contrast to the Federal Kidnaping Act, it is clear from the face of the statute before us that the very purpose of the Legislature and Governor in enacting the statute was to provide for capital punishment in New York. The statute’s severability clause indicates that the lawmakers would not have wanted the entire statute to fail if the particular provisions regarding pleas were declared unconstitutional:
 

 “If any section, part or provision of this act shall be declared unconstitutional or invalid or ineffective by any court of competent jurisdiction, such declaration shall be limited to the section, part or provision directly involved in the controversy in which such declaration was made and shall not affect any other section, part or provision thereof’ (L 1995, ch 1, § 37).
 

 Nor is invalidation of the death penalty necessary to obviate the
 
 Jackson
 
 problem: excision of the capital pleading provisions eliminates the burden on constitutional rights prohibited by
 
 Jackson,
 
 since without those provisions there is only one maximum penalty for first degree murder. Furthermore, the plea provisions are discrete, and by no means vital to the remainder of the statute. Their removal would not affect the classification of capital offenses, or the conduct of the trial or penalty phase of capital cases.
 

 Finally, while CPL 220.10 (5) (e) and 220.30 (3) (b) (vii) relate exclusively to pleas in first degree murder cases and
 
 *629
 
 “needlessly” encourage guilty pleas in violation of
 
 Jackson,
 
 CPL 220.60 (2) (a) is not limited to first degree murder cases,
 
 [6]
 
 nor does it, in the absence of CPL 220.10 (5) (e), violate
 
 Jackson.
 
 Therefore, only CPL 220.10 (5) (e) and 220.30 (3) (b) (vii) must be stricken.
 
 [7]
 
 Under the resulting statute, a defendant may not plead guilty to first degree murder while a notice of intent to seek the death penalty is pending.
 

 We realize this result will reduce the flexibility of both prosecutors and defendants who wish to plea bargain in capital cases. Indeed, our reversal in these cases may well have an ironic twist in that capital defendants will have fewer opportunities to avoid the possibility of the death penalty. We are also aware that the Supreme Court has not revisited
 
 Jackson
 
 and its progeny in 20 years, and that these cases might he decided differently today in light of the increased significance of plea bargaining and substantial changes in the administration of capital punishment. The fact remains, however, that although the Supreme Court itself may revisit its interpretation of Federal constitutional provisions, State courts are bound under the Federal Constitution to follow controlling Supreme Court precedent, and
 
 Jackson
 
 compels the result here.
 

 While reducing the flexibility of plea bargaining in capital cases, excision of the unconstitutional provisions does not prevent pleas of guilty to first degree murder when no notice of intent to seek the death penalty is pending, since defendants in that situation face the same maximum sentence regardless of how they are convicted. Nor does the resulting statute prevent a defendant from pleading guilty to another offense not punishable by death, even when a notice of intent to seek the death penalty is pending, since nothing in
 
 Jackson
 
 prohibits imposing different penalties for different crimes. As the Supreme Court made clear in upholding the plea of a defendant charged with first degree murder who pleaded guilty
 
 *630
 
 to second degree murder, a State “may prohibit the practice of accepting pleas to lesser included offenses under any circumstances,” but “this is not the mandate of the Fourteenth Amendment and the Bill of Rights”
 
 (North Carolina v Alford,
 
 400 US, at 39).
 
 (See also, State v Johnson,
 
 134 NH 570, 575, 595 A2d 498, 501,
 
 supra
 
 [“It is well settled that a statute cannot permit a defendant who insists upon a jury trial and is convicted of capital murder to be sentenced to death, while allowing a defendant who pleads guilty to
 
 the same crime
 
 to escape the possibility of such a sentence” (emphasis supplied)].) Thus, while a defendant may not plead guilty to first degree murder while a notice of intent to seek the death penalty is pending, plea bargaining to lesser offenses even when a notice of intent is pending, or to first degree murder in the absence of a notice of intent, remains unaffected.
 

 Given our conclusion under the Federal Constitution, we do not reach appellants’ arguments under the New York State Constitution. We agree with the Appellate Division that appellants’ procedural contentions in
 
 Matter of Relin
 
 are without merit.
 

 Accordingly, in each case, the order of the Appellate Division should be reversed, without costs, and judgment granted declaring that CPL 220.10 (5) (e) and 220.30 (3) (b) (vii) are unconstitutional and are deemed severed and stricken.
 

 Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 In each case: Order reversed, etc.
 

 [1]
 

 . Significantly, of the 39 death penalty jurisdictions in the United States, only the New York statute provides for such a difference in maximum punishments.
 

 [2]
 

 . Respondents’ reliance on
 
 People v Sher
 
 (24 NY2d 454,
 
 mot to amend remittitur granted
 
 24 NY2d 1031,
 
 cert denied
 
 396 US 837), a case decided before
 
 Michael A. C.,
 
 is misplaced. Defendant in
 
 Sher
 
 was not subject to the death penalty at the time of his appeal. On June 1, 1965, Governor Rockefeller announced that he would grant executive clemency to all death row inmates, such as Sher, who would not be subject to capital punishment under the revised death penalty statute, and commute their sentences to life imprisonment
 
 (see, People v Sher, supra,
 
 24 NY2d, at 456, n, citing press release of June 1, 1965 by Governor Rockefeller at the time of approval of L 1965, ch 1030, § 125.30). Thus, Sher was subject to the same maximum sentence after a jury trial — life imprisonment — as he would have been had he pleaded guilty.
 

 [3]
 

 . In the years following
 
 Jackson,
 
 the Supreme Court made clear that
 
 Jackson
 
 did not establish a new test for determining the validity of guilty pleas, but rather prohibited the Federal Kidnaping Act’s impermissible burden on a defendant’s exercise of constitutional rights. The Court also held that an otherwise valid plea is not necessarily involuntary if induced by the defendant’s fear of the death penalty, and it refused to vacate guilty pleas simply because they were agreed to pursuant to statutes subsequently invalidated by
 
 Jackson (see, Brady v United States, 397 US 742; North Carolina v Alford,
 
 400 US 25;
 
 Parker v North Carolina, 397
 
 US 790).
 

 [4]
 

 . The Nevada Supreme Court, in striking Nevada’s death penalty, also concluded that the approval of both the State and the court could not save an otherwise unconstitutional capital pleading scheme
 
 (Spillers v State,
 
 84 Nev 23, 436 P2d 18,
 
 overruled on other grounds Bean v State,
 
 86 Nev 80, 465 P2d 133).
 

 [5]
 

 . While the Supreme Court has never overruled
 
 Jackson,
 
 it has not since
 
 Corbitt
 
 (decided in the quite different world of 1978) made reference to
 
 Jackson’s
 
 “needless” encouragement of guilty pleas in any majority opinion. As discussed below, however, the
 
 Jackson
 
 rationale continues to have controlling significance in the State courts. Several State courts during the past two decades have explicitly relied on
 
 Jackson
 
 in declaring provisions of their
 
 *626
 
 States’ death penalty statutes unconstitutional on this ground, most recently New Hampshire in 1991 (see,
 
 State v Johnson,
 
 134 NH 570, 595 A2d 498).
 

 [6]
 

 . By its terms, CPL 220.60 (2) (a) allows defendants who have pleaded not guilty to any indictment to withdraw the plea before a verdict, subject to certain limitations, including the limitations of CPL 220.10 (5). Thus, CPL 220.60 (2) (a) affects many cases unrelated to first degree murder.
 

 [7]
 

 . While there is nothing objectionable in the portion of the two unconstitutional provisions that merely allows a defendant to plead guilty to first degree murder with the permission of the court and consent of the People, saving this portion of the provisions would not eliminate the
 
 Jackson
 
 problem. Since by statute only a jury can impose a death sentence and there is no procedure for impaneling a jury to sentence a defendant after a guilty plea (see, CPL 400.27), defendants could still avoid the possibility of death only by pleading guilty.