OPINION OF THE COURT
 

 Levine, J.
 

 The issue in this case is whether mandamus lies to compel County Court to entertain petitioner’s offer to plead guilty to all counts of the indictment charging him with capital murder, before the filing by the District Attorney of a notice of intent to seek the death penalty and prior to the expiration of the statutory period within which such notice may be filed. We agree with the Appellate Division that mandamus does not lie in this case because petitioner had no unqualified statutory right, let alone the required “clear legal right” for mandamus, to plead guilty under these circumstances.
 

 On October 8, 1998, a Dutchess County Grand Jury indicted petitioner Kendall Francois on eight counts of murder in the first degree, as defined under New York’s 1995 death penalty legislation (see, Penal Law § 125.27 [1] [a] [xi]; L 1995, ch 1), eight counts of murder in the second degree (Penal Law § 125.25 [1]) and one count of attempted second degree assault (Penal Law §§ 110.00, 120.05 [1]). He was arraigned on the indictment and entered a plea of not guilty. Pursuant to CPL 250.40 (2), Francois’ arraignment marked the beginning of a 120-day period within which the District Attorney was authorized to serve a notice of intent to seek the death penalty. In November, the District Attorney wrote to the Capital Defender Office inviting the submission of any mitigation information the defense might request the prosecutor to consider in determining whether to seek the death penalty.
 

 On December 22, 1998, before the District Attorney either filed a notice of intent to seek the death penalty or announced his intention not to do so, this Court decided
 
 Matter of Hynes v Tomei
 
 (92 NY2d 613,
 
 cert denied
 
 527 US 1015). There we considered a challenge, under
 
 United States v Jackson
 
 (390 US 570), to the constitutionality of the 1995 death penalty statute.
 
 *36
 
 As we explained in
 
 Hynes,
 
 the specific defect the Supreme Court identified in the Federal Kidnaping Act was that it “authorized the death penalty only on the recommendation of a jury, while a defendant
 
 convicted of the same offense
 
 on a guilty plea or by a Judge escaped the threat of capital punishment”
 
 (id.,
 
 at 621, citing
 
 United States v Jackson, supra,
 
 at 583 [emphasis supplied]), thus needlessly burdening an accused’s Fifth and Sixth Amendment rights.
 

 We held in
 
 Matter of Hynes v Tomei
 
 that this State’s capital punishment statute had a
 
 Jackson
 
 infirmity. We described the statutory scheme under which, when the District Attorney elects to seek the death penalty, a jury trial is provided for the guilt-adjudication stage and then, upon conviction, there is a mandated second “sentencing proceeding before a jury to determine whether the penalty imposed will be death or life imprisonment without parole
 
 (see,
 
 CPL 400.27)”
 
 (id.,
 
 at 622). However, the statute permitted a guilty plea to first degree murder only “with both the permission of the court and the consent of the people
 
 when the agreed upon sentence
 
 is either
 
 life imprisonment without parole or a term of imprisonment
 
 for the class A-I felony of murder in the first degree” (CPL 220.10 [5] [e]; 220.30 [3] [b] [vii] [emphasis supplied]). Thus, we concluded in
 
 Matter of Hynes v Tomei
 
 that, just as under the Federal Kidnaping Act struck down in
 
 United States v Jackson,
 
 avoidance of the maximum penalty for conviction of the capital offense (here, murder in the first degree) could only be assured to defendants who plead guilty rather than assert innocence and go to trial before a jury.
 

 Instead of invalidating the entire statute in
 
 Hynes,
 
 however, we held that the death penalty legislation could be saved from this particular challenge by severance of the offending guilty plea provisions contained in CPL 220.10 (5) (e) and 220.30 (3) (b) (vii). We, therefore, limited our ruling to declaring those specific sections unconstitutional and striking them from the statute. Because the District Attorney had already filed a notice of intent to seek the death penalty
 
 (see,
 
 237 AD2d 52, 54), we also interpreted the statute as prohibiting a guilty plea to capital murder while such a death penalty notice was pending
 
 (see,
 
 92 NY2d, at 629).
 

 On December 23, the day following the decision in
 
 Matter of Hynes v Tomei,
 
 still before a death penalty notice had been filed by the District Attorney in this case, petitioner made an uncalendared appearance before County Court, Dutchess County, in which he offered to plead guilty to the entire indict
 
 *37
 
 ment. The District Attorney opposed acceptance of the plea and, the following day, filed the death penalty notice. County Court reserved decision on the guilty plea offer and later rendered a decision refusing to accept the plea.
 

 Petitioner then brought before the Appellate Division the instant CPLR article 78 proceeding, in the nature of mandamus, for an order directing County Court to “entertain” his plea of guilty to the entire indictment. The Appellate Division dismissed the petition, holding that mandamus did not lie here because petitioner “failed to demonstrate a clear legal right to the relief sought” (263 AD2d 483). We agree. The legislative scheme does not support the theory that a person indicted for capital murder has an unqualified right, by pleading guilty to the indictment, to thwart the statutory authority of a District Attorney to make a fully deliberative decision whether to seek the death penalty, within the 120-day period after arraignment prescribed by CPL 250.40 (2).
 

 Petitioner’s case for mandamus, requiring the trial court to entertain his guilty plea to the entire indictment, rests on CPL 220.10 (2) and 220.60 (2), general plea provisions of the Criminal Procedure Law. Petitioner argues that these sections, which were enacted before, and left in place by, the death penalty statute, in the absence of the stricken provisions, give all defendants, including those charged with capital murder, an absolute right to plead guilty to an entire indictment upon arraignment and at any time before verdict.
 

 For several reasons we reject this argument and hold that until the completion of the statutorily provided deliberative process, either by the filing of a death penalty notice, announcement of an intention not to seek that sanction, or by the expiration of the statutory period to make that decision, a capital defendant does not have an unqualified right to plead guilty to the entire indictment. Thus, to the extent that there is a conflict between sections 220.10 (2) and 220.60 (2), on the one hand, and the provision giving the District Attorney the authority to decide whether to seek the death penalty and a period to deliberate on that decision (see, CPL 250.40), the latter provision prevails.
 

 Of foremost importance, if as petitioner contends, he has an unqualified right to plead guilty to an entire capital crime indictment, two critical powers conferred on the District Attorney in the 1995 death penalty legislation could be preempted. First, the defendant could thereby prevent the prose
 
 *38
 
 cution from pursuing the death penalty even
 
 after
 
 a notice of intent to seek the death penalty was filed under CPL 250.40 (1) . This is because there is no provision for impaneling a jury for the required death penalty sentencing stage after a guilty plea to capital murder
 
 (see,
 
 CPL 400.27;
 
 Matter of Hynes v Tomei,
 
 92 NY2d, at 629, n 7). Thus, the only legal sentence upon a guilty plea would be either life imprisonment without parole or a term of years in prison. In order to avoid this result, in
 
 Matter of Hynes v Tomei,
 
 we construed the statute, as a whole, not to permit a capital defendant to exercise an unqualified right to plead guilty to murder in the first degree while a death penalty notice was pending
 
 (see, Matter of Hynes v Tomei, supra,
 
 92 NY2d, at 629).
 

 Second, in entering a plea to capital murder, a defendant could preclude the District Attorney from even exercising the statutory right to consider, over time (weighing aggravating and mitigating factors), whether to seek the ultimate sanction in a capital murder case. This implication is presented here, and would be the end result of acceptance of petitioner’s position on this appeal. The statutory structure and the legislative history show that the role of the District Attorney, and attendant statutory rights and responsibilities, was the keystone of the 1995 bill. The prosecutor’s filing of a notice of intent to seek the death penalty is a
 
 sine qua non
 
 for the imposition of the ultimate sanction in a capital case
 
 (see,
 
 CPL 250.40 [1] [“A sentence of death
 
 may not
 
 be imposed * * * unless * * * the people file * * * and serve * * * a notice of intent to seek the death penalty” (emphasis supplied)]). That prosecutorial authority and the statutory time frame for its exercise are emphasized as a central feature of the bill in the Governor’s Program Bill Memorandum (Bill Jacket, L 1995, ch 1, at 14), as well as in the Assembly Codes Committee Memorandum
 
 (id.,
 
 at 23). Conversely, when sections 220.10 (2) and 220.60 (2) , relied upon here by petitioner, were originally enacted, the Legislature expressly evinced its intention to limit their application in capital cases under the death penalty statute of that time
 
 (see,
 
 CPL former 220.10 [5] [e]; 220.60 [1]; Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 220.10, at 11). Thus, petitioner’s proposed interpretation, would substantially undermine the present statutory framework, and is not supported by the legislative history of those provisions.
 

 Moreover, giving precedence to the subsequently enacted, specific provision of section 250.40 over the earlier enacted,
 
 *39
 
 more general provisions of CPL 220.10 (2) and 220.60 (2) is consistent with the canon of statutory interpretation most directly applicable here: “what is special or particular in the later of two statutes supersedes as an exception whatever in the earlier statute is unlimited or general”
 
 (East End Trust Co. v Otten,
 
 255 NY 283, 286 [Cardozo, Ch. J.];
 
 see, Gwynne v Board of Educ.,
 
 259 NY 191, 197).
 

 Finally, we should not ignore the unintended and untoward effects of a contrary ruling. As this case illustrates, and County Court pointed out, it would inevitably result, in the most heinous or high profile cases, in an unseemly race to the courthouse between defense and prosecution to see whether a guilty plea or notice of intent to seek the death penalty will be filed first. The need for precipitous action to file a death penalty notice before the plea was offered would undeniably preclude the thorough, fully deliberative decision making on whether to seek the death penalty that the Legislature contemplated, and one would hope a District Attorney would employ, in the exercise of that official’s profound responsibilities conferred under the present death penalty statute. For all of these reasons, we hold that the Appellate Division properly dismissed the petition here.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Judgment affirmed, without costs.