OPINION OF THE COURT
Levine, J.
On May 29, 1997, defendant Daniel Edwards was indicted on one count each of murder in the first degree (see, Penal Law § 125.27 [1] [a] [vi]; [b]; L 1995, ch 1), murder in the second degree (Penal Law § 125.25 [1]), conspiracy in the second degree (Penal Law § 105.15) and criminal possession of a weapon in the second degree (Penal Law § 265.03). On January 26, 1998, the prosecution filed a notice of intent to seek the death penalty pursuant to CPL 250.40 (2).
In September 1998, County Court denied defendant’s motions to suppress oral and written statements he had made to the police, and scheduled the trial to begin November 9, 1998. Prior to that date, the People and counsel for defendant entered into plea negotiations and ultimately agreed that defendant would be permitted to plead guilty to murder in the first degree in full satisfaction of the indictment and receive an indeterminate sentence of 25 years to life imprisonment, in exchange for defendant’s cooperation in the prosecution’s case against his codefendants. They further agreed that the prosecution would formally withdraw the notice of intent after defendant’s allocution and offer of his guilty plea but before the court’s acceptance of that plea. After a recess, during which defendant had the opportunity to confer once again with his counsel, defendant offered a plea of guilty to murder in the first degree in accordance with the terms and conditions of the plea agreement.
County Court conducted a detailed allocution regarding whether defendant offered the plea freely, voluntarily and with full awareness of the rights he was forfeiting. At the time of the plea, defendant expressly waived his right to appeal except with respect to his motion to suppress. After defendant’s al *449 locution, the People withdrew the notice of intent and County Court then accepted defendant’s plea and ordered a presentence investigation and report.
On December 22, 1998, after defendant’s guilty plea had been entered but before sentencing, this Court decided Matter of Hynes v Tomei (92 NY2d 613, cert denied 527 US 1015). Hynes came to this Court as a result of a CPLR article 78 petition in the nature of prohibition seeking to prevent Justice Tomei from enforcing an order declaring the plea provisions of the death penalty statute facially unconstitutional. In that case, we struck CPL 220.10 (5) (e) and CPL 220.30 (3) (b) (vii), the plea provisions, from New York’s death penalty statute. Those provisions permitted a defendant — against whom a 250.40 (2) notice was pending — to enter a guilty plea to the crime of first degree murder only with consent of the People and permission of the court and only when the agreed-upon sentence was either life without parole or a term of years.
This Court excised those provisions to avoid a constitutional infirmity under United States v Jackson (390 US 570 [1968]). New York’s death penalty statute, like the defect the Supreme Court specifically identified in the Federal Kidnaping Act in Jackson, created a two-tiered penalty structure that impermissibly burdened capital defendants’ Fifth Amendment rights against self-incrimination and Sixth Amendment rights to trial by jury by limiting imposition of a death sentence exclusively to defendants asserting those rights by insisting upon a jury trial (see, Matter of Hynes, supra, at 621, citing United States v Jackson, supra, at 583). In order to remedy that flaw, this Court construed the first-degree murder statute to prohibit entry of a guilty plea to murder in the first degree while a CPL 250.40 notice is pending (see, Matter of Hynes v Tomei, supra, at 629). Further, in order to prevent a “race to the courthouse” in first-degree murder cases, we held that a defendant does not have an unqualified right to plead guilty before the notice is filed and prior to the expiration of the statutory period within which the notice may be filed (see, Matter of Francois v Dolan, 95 NY2d 33, 38-39).
In February 1999, defendant moved to withdraw his guilty plea on the ground that it was invalid under Matter of Hynes v Tomei. County Court denied the motion, noting first that defendant did “not challenge his plea as involuntary or unknowing or unintelligent,” and concluding that because defendant’s plea was actually entered “after the notice of intent was withdrawn” or “in conjunction with the withdrawal of the no *450 tice of intent,” it was valid notwithstanding Matter of Hynes v Tomei (180 Misc 2d 564, 566, 567). Thereafter, on April 28, 1999, the court sentenced defendant to 25 years to life in prison, in accordance with the terms of the negotiated plea.
On appeal to the Appellate Division, defendant argued that his plea was invalid and that his suppression motion was improperly denied. That court reversed defendant’s conviction on the ground that it was error to deny defendant’s motion to withdraw his plea, vacated defendant’s plea and sentence and restored the parties to their pre-plea position by reinstating the notice of intent to seek the death penalty.[1] The Appellate Division determined that because the plea was entered “pursuant to statutory provisions invalidated after defendant’s waiver [of his right to appeal] * * * defendant could not have knowingly and intelligently waived his right to appeal the constitutional infirmity” (274 AD2d 754, 756 [emphasis supplied]). The court further concluded that defendant’s challenge fell into the category of those claims — such as an illegal sentence or an involuntary plea — that could never be waived in any event.
Turning to defendant’s argument that this Court’s decision in Hynes v Tomei rendered his plea invalid, the Appellate Division held that the procedure utilized by County Court in order to avoid any Jackson problem was “flawed because it overlooks the essence of the Hynes-Jackson infirmity” (id., at 757). The court reasoned that the “constitutional infirmity arises not from the entry of a guilty plea to murder in the first degree while a death notice is pending, but from the requirement placed upon a defendant to choose between pleading guilty to murder in the first degree or opting for trial while a death notice is pending” (id. [emphasis in the original]). Thus, the Appellate Division concluded that the “mere proffer of a plea bargain to murder in the first degree while a death notice is pending presents a capital defendant with the same unconstitutional choice faced by the defendants in Matter of Hynes v Tomei * * * and Matter of Relin v Connell * * * namely, ‘exercise Fifth and Sixth Amendment rights and risk death, or abandon those rights and avoid the possibility of death’ ” (id., at 757-758 [quoting Matter of Hynes v Tomei, supra, at 626]). A Judge of this Court granted both the People and defendant *451 leave to-appeal. We now reverse on the People’s appeal, and dismiss defendant’s appeal.[2]
On this appeal, the dispositive issue is whether, as a matter of Federal constitutional law, defendant’s plea of guilty to first degree murder was invalid as having impermissibly burdened his Fifth and Sixth Amendment rights.[3] The People essentially raise three points for reversal. First, they argue that invalidity under Jackson-Hynes was avoided under the sequence in which defendant’s plea was offered, accepted and entered in this case. That is because immediately after defendant’s allocution, but before the plea actually became effective by its acceptance by the court and its formal entry, the People had withdrawn the notice of intent to seek the death penalty. Second, the People contend that, even assuming that the mere proffer of a guilty plea while a notice of intent was still pending implicated a Jackson infirmity, it would not necessarily render defendant’s plea of guilty constitutionally invalid, and the Appellate Division erred in holding otherwise. Third, the People assert that defendant’s separate waiver of his right to appeal precludes appellate review of all claims except for that related to denial of his suppression motion. Because we agree that, under binding Supreme Court precedent, defendant’s plea was not rendered invalid by JacksonHynes, we need not address whether the specific procedure employed in this case avoided any Jackson defect, nor whether defendant’s waiver of his right to appeal precluded him from making his constitutional claims.
Defendant makes a two-fold counter-argument regarding the validity of his guilty plea under Jackson-Hynes. First, he contends that, because he did not — and indeed could not— predict this Court’s decision in Matter of Hynes v Tomei, as a matter of law his guilty plea could not have been made knowingly and intelligently and the Appellate Division therefore correctly set it aside. Second, he argues that, as the Appellate *452 Division held, Jackson-Hynes invalidates any procedural scheme under which a defendant is forced to choose to plead guilty to a capital offense as the only means of avoiding exposure to the death penalty. Hence, as a result, a guilty plea thus engendered cannot constitutionally be valid. United States Supreme Court precedents defeat both arguments.
As to the effect of the handing down of Matter of Hynes v Tomei subsequent to defendant’s guilty plea, Brady v United States (397 US 742 [1970]) is directly on point and conclusively contrary to defendant’s position. In Brady, the Supreme Court considered the validity of a capital offense guilty plea under the very same Federal Kidnaping Act death penalty provisions that were declared unconstitutional in Jackson. Brady pleaded guilty prior to the Jackson decision.
Like defendant’s argument here regarding the later Hynes decision by our Court, Brady argued in the Supreme Court that his inability to anticipate the intervening Jackson decision established that his plea could not have been knowingly and intelligently made. The Supreme Court’s outright rejection of that contention is directly applicable to the same argument here. “[A]bsent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise” (id., at 757 [citation omitted]). Accordingly, the “fact that Brady did not anticipate United States v Jackson, supra, does not impugn the truth or reliability of his plea” (id.). Here, too, defendant’s guilty plea was not rendered invalid merely because our subsequent Hynes decision may have shown “that the plea rested on a faulty premise” (id.).
We conclude that defendant’s alternative argument for invalidating his plea is also meritless, upon further review of, on the one hand, Brady and other Supreme Court cases upholding guilty pleas under statutes violating Jackson and, on the other hand, Supreme Court decisions vacating death sentences imposed after trial under statutes violating Jackson. Defendant argues that, in effect, any guilty plea to a capital offense is invalid where a defendant was faced with the choice of exercising Fifth and Sixth Amendment trial rights and risking death, or waiving those rights and pleading guilty in order to avoid that risk. Brady, however, expressly cautioned against the conclusion that a Jackson defect in the particular death penalty statute necessarily required invalidation of a guilty *453 plea entered pursuant thereto that was otherwise valid (i.e., voluntary, knowing and intelligent):
“Plainly, it seems to us, Jackson ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not. Jackson prohibits the imposition of the death penalty under [the defective statute], but that decision neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both ‘voluntary’ and ‘intelligent’ ” (Brady, supra, at 747 [citing Boykin v Alabama, 395 US 238, 242]; see also, Hynes, supra, at 623, n 3).
This conclusion was reiterated in Parker v North Carolina (397 US 790), decided during the same term as Brady. In Parker, the Court noted “[i]t may be that under United States v Jackson * * * it was unconstitutional to impose the death penalty under the statutory framework which existed in North Carolina at the time of Parker’s plea” {id., at 794-795). Nonetheless, the Court held “that an otherwise valid plea is not involuntary because induced by the defendant’s desire to limit the possible maximum penalty to less than that authorized if there is a jury trial” (id., at 795; see also, North Carolina v Alford, 400 US 25).
In stark contrast, in a series of 1971 cases in which death sentences were imposed after trial under the very same constitutionally defective North Carolina statute pursuant to which the Parker defendant pleaded guilty to a capital offense, the Supreme Court summarily reversed the death sentences, relying on Jackson (see, Atkinson v North Carolina, 403 US 948; Roseboro v North Carolina, 403 US 948; Hill v North Carolina, 403 US 948; Williams v North Carolina, 403 US 948; Sanders v North Carolina, 403 US 948; see also, Matter of Hynes v Tomei, supra, 92 NY2d, at 624 [noting Supreme Court reversals of death sentences imposed after trial under unconstitutional pleading scheme]).
This post -Jackson line of cases illustrates the Supreme Court’s shift in focus away from the coercive effect of the death penalty on a defendant who pleads guilty, and toward the “impermissible burden” a two-tiered penalty structure imposes on a defendant’s assertion of his or her constitutional rights. *454 Accordingly, the Supreme Court left undisturbed convictions in which the risk of death was avoided by an otherwise valid guilty plea. Contrariwise, the Court held that death sentences imposed upon capital defendants who had exercised Fifth and Sixth Amendment rights under such defective statutes were constitutionally barred by Jackson. In Hynes, we explicitly noted the effect of the later cases vacating death sentences imposed under Jackson-faulty statutes (see, Matter of Hynes v Tomei, supra, 92 NY2d, at 624). In response to those cases, we construed and excised portions of the New York death penalty statute to eliminate its Jackson infirmity and thereby obviate such future Fifth and Sixth Amendment challenges to the imposition of death sentences. Thus, any Jackson-Hynes infirmity does not — in and of itself — render invalid an otherwise valid guilty plea.
As noted above, this case is procedurally and analytically indistinguishable from Brady v United States (397 US 742, supra) with respect to an asserted violation of Fifth and Sixth Amendment rights. In both Brady and in this case, defendants each entered an otherwise entirely valid guilty plea under a statute that was Jackson-defective at the time of the plea. Thus, we conclude that defendant’s guilty plea to first-degree, murder — even if it had been the exclusive means by which he avoided exposure to the risk of imposition of the death penalty — did not, standing alone, violate his Fifth or Sixth Amendment rights. Because the order of the Appellate Division was based upon the premise that defendant’s Fifth and Sixth Amendment rights were thus violated, it must be reversed.
The dissent’s effort to distinguish this case from Brady is unavailing and actually inconsistent with the Supreme Court’s own view of its Brady precedent. As the dissent accurately notes, the gravamen of defendant’s constitutional complaint here is the impairment of his Fifth Amendment privilege against self-incrimination and Sixth Amendment right to a jury trial, inducing his guilty plea. “Just as the applicable provisions chilled a defendant’s exercise of Fifth and Sixth Amendment rights in United States v Jackson and Hynes v Tomei, the provisions, already declared unconstitutional, chill those rights in this case” (dissenting opn, at 459).
Having recognized that the thrust of defendant’s claim is that his Fifth and Sixth Amendment rights were violated, the dissent attempts to distinguish Brady as merely involving “whether defendant’s plea was voluntary when the reason for *455 the plea was to avoid the death penalty. Here, voluntariness is not an issue” (id., at 460). The dissent’s portrayal of Brady is inaccurate. First, as already noted, Brady expressly states that its ruling was intended to cover not only the issue of whether or not a guilty plea induced by a Jackson defect is involuntary, but also whether such a guilty plea is invalid, irrespective of its voluntariness. To be sure, Brady indicated that Jackson did not necessarily render involuntary all guilty pleas encouraged by fear of a possible death sentence under defective statutes. Brady did more than that, however. Brady explicitly made clear that Jackson additionally did not imply that all “such encouraged pleas are invalid whether involuntary or not” (397 US, at 747 [emphasis supplied]).
Moreover, in Hynes, we expressly recognized that Brady and its companion cases were controlling on the very issue in this case as framed by the dissent: “whether the plea is valid when the statutory provisions under which the plea was made are unconstitutional” (dissenting opn, at 460). Citing Brady, Alford and Parker, we stated in Hynes that the Supreme Court had “refused to vacate guilty pleas simply because they were agreed to pursuant to statutes subsequently invalidated by Jackson” (Matter of Hynes v Tomei, 92 NY2d, at 623, n 3 [emphasis supplied]).
Finally, the dissenting opinion ignores the effect of its acknowledgment that “[h]ere, voluntariness is not an issue” (dissenting opn, at 460 [emphasis supplied]). That concession, together with our holding that the mere fact that defendant’s guilty plea was entered before Hynes was decided is not inconsistent with a finding that it was made knowingly and intelligently, is fatal to all of defendant’s arguments adopted by the dissent. In settled doctrine from at least as early as Boykin v Alabama (395 US 238, 243), the Supreme Court has held that a voluntary, knowing, intelligent and fully counseled guilty plea waives, among other rights, a defendant’s Fifth Amendment privilege against self-incrimination and Sixth Amendment right to trial by jury. Our precedents are in full agreement (see, eg., People v Hansen, 95 NY2d 227, 230).
In Tollett v Henderson (411 US 258), the Supreme Court reviewed its Brady and Parker precedents, which had applied that waiver principle to capital offense guilty pleas induced by statutes impermissibly burdening defendant’s Fifth and Sixth Amendment trial rights — the heart of defendant’s contentions here. In Tollett, the Court emphatically confirmed its continued adherence to those holdings.
*456 “We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea” (411 US, at 267).
Because, under Brady, defendant’s Fifth and Sixth Amendment arguments for invalidation of his guilty plea necessarily fail, we need not consider the effect of his separate waiver of the right to appeal on his assertions of the impairment of those very Fifth and Sixth Amendment rights.
Accordingly, on the People’s appeal, the order of the Appellate Division should be reversed, the plea reinstated and the case remitted to the Appellate Division to conduct, in the exercise of its factual review powers and its interests of justice jurisdiction, the necessary review of the record. Defendant’s appeal should be dismissed upon the ground that he is not adversely affected by the Appellate Division order within the meaning of CPL 450.90 (1).

. The court also upheld the County Court’s denial of defendant’s suppression motion.

. [1] Defendant’s appeal must be dismissed. Although the order of the Appellate Division granted defendant only partial relief, it was nonetheless not adverse to defendant within the meaning of CPL 450.90 (1) and, thus, this Court is not empowered to review defendant’s challenges to that order insofar as it upheld the denial of his suppression motion and reinstated the death notice (see, CPL 450.90 [1]; Karger, Powers of New York Court of Appeals § 129 [a], at 735 [3d ed]).

. Contrary to the position taken by the dissent, all of defendant’s contentions are related to and exclusively in support of this one Federal constitutional challenge.