[737 NYS2d 152]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY F. WHITEHURST, Appellant.

Third Department, January 31, 2002

### APPEARANCES OF COUNSEL

*John T. Casey, Jr.,* Albany, for appellant.

*Eliot Spitzer, Attorney General,* New York City (*Laurie M. Israel* of counsel), for respondent.

### OPINION OF THE COURT

SPAIN, J.

In November 1995, defendant was indicted for, *inter alia*, murder in the first degree in connection with the death of a young girl, and the People thereafter filed a notice of intent to seek the death penalty. One year later, while represented by the Capital Defender Office, defendant pleaded guilty to murder in the first degree in satisfaction of the 28-count indictment and was sentenced to life in prison without parole. On September 28, 1998, defendant filed a CPL 440.10 motion seeking to, *inter alia*, vacate the judgment of conviction and sentence, dismiss the underlying indictment and enforce a cooperation agreement in which the People had made promises to defendant in exchange for his assistance in locating the missing child. After a hearing, County Court denied defendant's motion. Defendant appeals from the judgment of conviction

and, by permission of this Court, from the order denying his CPL 440.10 motion.

The relevant facts are largely undisputed. On September 21, 1995 a seven-year-old girl disappeared from the front yard of her home in the City of Kingston, Ulster County. Defendant was questioned by police within hours of the girl's disappearance and denied any involvement. Thereafter, defendant retained an attorney, but after he was taken into custody and charged with kidnapping in the first degree, the attorney withdrew as counsel due to defendant's failure to pay a retainer. Thereafter, defendant was questioned regarding the whereabouts of the child.

The next day, September 24, 1995, defendant stated that he could help the police find the child and demanded the presence of an Assistant District Attorney. Negotiations ensued, during which defendant asserted that there was a possibility that the child was still alive, and defendant and the Assistant District Attorney signed a written "cooperation agreement" by which defendant agreed to disclose information relative to the child's whereabouts and plead guilty to kidnapping in exchange for the People's promise not to charge defendant with murder. The agreement provided that defendant would receive a minimum sentence of 10 years if the child were found alive and a minimum sentence of between 10 and 15 years if she were found dead. A handwritten addendum to the agreement stated that defendant had the right to go to trial, but that the exercise of that right would void the agreement.

Defendant then led law enforcement personnel on a circuitous search for the child. During the search, defendant indicated that he had struck the girl in the head with a rock and strangled her, but he knew that she was alive when he left her because she was moaning. After over five hours of searching several different locations, defendant led the search team to a wooded area in the Town of Ulster, Ulster County, where the child's body was found buried under leaves and sticks with only a portion of her foot exposed. An autopsy and forensic examination of the body indicated that the child had been sexually abused and died instantly as a result of a massive blunt force injury to the head.

Thereafter, the People expressly repudiated the cooperation agreement and charged defendant in a felony complaint with murder in the second degree. Following arraignment, defendant commenced a CPLR article 78 proceeding to prohibit the People from prosecuting him for murder in the first or second

degree. Supreme Court (Hughes, J.) held that prohibition was not appropriate and permitted the prosecution to continue (*Whitehurst v Kavanagh*, 167 Misc 2d 86, 89-92). On appeal, this Court affirmed (*Matter of Whitehurst v Kavanagh*, 218 AD2d 366, *lv dismissed and denied* 88 NY2d 873). In the meantime, defendant was indicted and the People filed a notice of intent to seek the death penalty. Approximately one year after the indictment—and more than six months after the Court of Appeals foreclosed defendant's appeal in the prohibition proceeding—defendant accepted the People's offer to plead guilty to murder in the first degree. At the time of the plea, pretrial hearings had not commenced and County Court had not ruled on defendant's pending motions to suppress evidence and to dismiss the indictment.

■ Defendant first contends that his guilty plea must be vacated because County Court failed to specifically advise him prior to accepting the plea that he would be relinquishing his rights under the cooperation agreement and abandoning his pretrial motions to dismiss the indictment and suppress evidence. Upon review, however, we find that the plea was knowingly, intelligently and voluntarily made and operated to extinguish any claims that defendant may have had under the cooperation agreement, as well as his rights to pursue his pretrial motions, despite the court's failure to explicitly address those specific consequences of the guilty plea.

"A guilty plea generally results in a forfeiture of the right to appellate review of any nonjurisdictional defects in the proceedings * * *" (*People v Fernandez*, 67 NY2d 686, 688 [citation omitted]; *see, People v Hansen*, 95 NY2d 227, 230; *People v Hamilton*, 232 AD2d 899, 900, *lv denied* 89 NY2d 942), and "trial courts are not required to engage in any particular litany during an allocution in order to obtain a valid guilty plea in which defendant waives a plethora of rights" (*People v Moissett*, 76 NY2d 909, 910-911). During the plea colloquy, defendant informed County Court that, *inter alia*, he had discussed the plea with his attorneys and that he was satisfied with their services, that he was entering the plea by his own free will and that no other sentencing promises had been made to him to induce his guilty plea. After defendant's allocution, which contained nothing to cast doubt upon the voluntariness of his plea (*cf., People v Lopez*, 71 NY2d 662, 666), the court asked defendant if there was anything else that he wished to place on the record, to which defendant responded, "Nothing, Your Honor, that is it." Under these circumstances, we hold that the

plea colloquy was sufficient and that defendant's plea was knowing, intelligent and voluntary (*see, People v Bolden*, 289 AD2d 607; *People v McCabe*, 289 AD2d 603; *People v Berthiaume*, 240 AD2d 953, 953-954).

We next turn to defendant's assertion that his plea was not voluntarily made because the proviso in the cooperation agreement—that it would be void if defendant elected to go to trial—made him feel compelled to plead guilty and forego going to trial in order to preserve his contractual rights under the cooperation agreement. The implausibility of this argument becomes apparent upon examination of the relevant, undisputed facts. Defendant contends that he felt forced to plead guilty to preserve his rights under the cooperation agreement and yet, rather than asserting those alleged rights to County Court, he pleaded guilty to murder in the first degree with the advice of counsel and without reservation of any kind, an outcome not contemplated by the cooperation agreement that he supposedly was attempting to enforce. Defendant's assertion that his plea in open court on the murder charge was rendered involuntary because he believed himself bound by a provision in a prior agreement—which the People were not in any respect relying on at the time that he entered his plea—is incredible and meritless (*cf., People v Lozovsky*, 267 AD2d 774, 775, *lv denied* 95 NY2d 836).

As noted, by pleading guilty, defendant forfeited his right to appellate review of any nonjurisdictional defect in the proceedings (*see, People v Fernandez*, 67 NY2d 686, 688, *supra*). Thus, we will not entertain defendant's argument that the evidence against him should have been suppressed because it was obtained in violation of his right to counsel (*see, id.; People v Carter*, 216 AD2d 482, 483). Moreover, defendant's statutory right to appeal from a final order on a suppression motion is inoperative because defendant pleaded guilty prior to obtaining a final order on the motion (*see*, CPL 710.70 [2]; *People v Fernandez, supra*, at 688). In addition, defendant pleaded guilty prior to the hearing on his suppression motion and, thus, "defendant precluded the making of a record and, in consequence, foreclosed the possibility of appellate review of his challenge to the admissibility of the People's evidence" (*People v Fernandez, supra*, at 688; *see, People v Charleston*, 54 NY2d 622, 623).

Likewise, defendant's challenge to the indictment based upon his contention that the evidence presented to the Grand Jury would have been suppressed is without merit as the sufficiency

of the evidence before the Grand Jury cannot be challenged following a guilty plea (*see, People v Hansen*, 95 NY2d 227, 233, *supra; People v Hamilton*, 232 AD2d 899, *supra*). In any event, even if defendant's suppression arguments were successful, the subsequent suppression of evidence presented to a Grand Jury does not impair the validity of the indictment (*see, People v Beames*, 174 AD2d 775, 776, *lv denied* 78 NY2d 961).

Next, relying on *People v Pelchat* (62 NY2d 97), defendant argues that he is entitled to challenge the indictment despite his guilty plea because the indictment was procured based on evidence obtained as a result of the People's allegedly fraudulent activity—specifically, the promise not to charge defendant with murder. Contrary to defendant's contention, however, *People v Pelchat (supra)* does not stand for the proposition that any alleged prosecutorial misconduct will provide a ground for attacking an indictment following a conviction upon a plea of guilty. There, the Court of Appeals noted the general rule that a defendant who pleads guilty may not thereafter challenge the sufficiency of the Grand Jury evidence even if there were technical defects in the proceedings, except to assert a defect in the court's jurisdiction or to raise an argument of a constitutional dimension (*id.*, at 108). The Court of Appeals then added a third exception, characterized as "a challenge based upon a guilty plea to an accusatory instrument which is void because of the prosecutor's knowledge that the only evidence to support it is false" (*id.*, at 108). The narrow, fact-specific holding of *Pelchat* is not helpful to defendant here. Unlike the prosecutor in *Pelchat*, who apparently turned a blind eye to false testimony presented to the Grand Jury, there is no suggestion that the People doubted the accuracy of the evidence presented to the Grand Jury in this case. The alleged prosecutorial misconduct here was the People's use, and subsequent repudiation, of a cooperation agreement in an attempt to locate a missing child. In our view, the conduct alleged in this case is insufficient to rise to the level which would warrant extending the *Pelchat* exception here.

In any event, were we to address defendant's contention in this regard, we would reject it in light of the fact that the promises made to defendant in the cooperation agreement were induced by defendant's own material misrepresentation. The cooperation agreement expressly stated, in setting forth the facts forming the bases for the promises made therein, that defendant "has indicated there is a possibility that [the child] is still alive." After reviewing the testimony and evidence ad-

duced in connection with defendant's CPL article 440 motion—particularly defendant's plea admission that he struck the child in the head with a rock, the uncontroverted medical evidence that such blow caused her death instantaneously and the fact that defendant buried the child's body under leaves and other debris before leaving her—we find ample support for County Court's finding that defendant misled authorities and extorted the agreement, aware that the child was dead. Thus, we decline to entertain defendant's argument that the People disingenuously made promises to him because he, himself, entered the agreement under fraudulent pretenses (*cf., Smith v Long*, 281 AD2d 897, 898). In light of our conclusion that, by pleading guilty, defendant waived any right he may have had to enforce the cooperation agreement, as well as our view that defendant's material misrepresentation would have provided a basis for rescission (*cf., Mercantile & General Reinsurance Co. v Colonial Assur. Co.*, 82 NY2d 248, 253), we find it unnecessary to further address the enforceability of the cooperation agreement.

■ We also reject defendant's argument that his guilty plea was the result of ineffective assistance by trial counsel. Considering the overwhelming evidence against defendant and the uncertainty of success on his pretrial motions, defendant received a favorable plea bargain (*see, People v Chevalier*, 226 AD2d 925, 929, *lv denied* 88 NY2d 934). Moreover, defendant expressly stated during his plea colloquy his satisfaction with the representation he had received (*see, People v Bolden*, 289 AD2d 607, 609, *supra*). Thus, under the totality of the circumstances viewed at the time of the representation, we conclude that defendant received meaningful representation (*see, People v Baldi*, 54 NY2d 137, 147; *People v Bolden, supra*; *People v Wilson*, 288 AD2d 117).

■ Finally, defendant argues that his plea should be vacated because, subsequent to his plea, the Court of Appeals found the plea provisions of the death penalty statute to be unconstitutional (*see, Matter of Hynes v Tomei*, 92 NY2d 613, *cert denied* 527 US 1015). However, the Court of Appeals has since expressly held that the infirmity of the plea provisions "does not—in and of itself—render invalid an otherwise valid guilty plea" (*People v Edwards*, 96 NY2d 445, 454). Given our conclusion that defendant's plea was otherwise knowing, voluntary and intelligent, we find *People v Edwards* (*supra*) dispositive of defendant's argument.

We have considered and rejected defendant's remaining contentions.

MERCURE, J. P., CREW III, CARPINELLO and ROSE, JJ., concur. Ordered that the judgment and order are affirmed.